ALVAN G. BERUBE & another[1] *vs.* McKESSON WINE & SPIRITS COMPANY.

Bristol.   March 20, 1979. — April 19, 1979.

Present: BROWN, GREANEY, & KASS, JJ.

*Practice, Civil,* Relief from judgment, Judicial discretion. *Judgment,* Relief from judgment.

Discussion of the factors to be considered by a judge in ruling on a motion for relief from judgment under Mass.R.Civ.P. 60 (b) (1) for excusable neglect by counsel for a party. [429-431]

On an appeal from an order allowing a motion for relief from a judgment of dismissal, the record in the case did not compel a conclusion either that the moving party's counsel had engaged in a conscious strategy to disobey the judge's order directing payment of costs or otherwise frustrate progress of the litigation [431-432]; or that the action was lacking in merit [433].

No abuse of discretion appeared in a judge's allowance of a motion for relief from a judgment of dismissal, where the record showed that the judge's ruling was fair and based on adequate consideration of several mitigating factors. [433-435]

CIVIL ACTION commenced in the Superior Court on January 21, 1975.

A motion for relief from judgment was heard by *Taveira, J.*

*Paul B. Galvani* for the defendant.

*George T. Bolger* for the plaintiffs.

GREANEY, J. This is an appeal from the allowance of the plaintiffs' motion under Mass.R.Civ.P. 60 (b) (1), 365 Mass. 828 (1974),[2] for relief from a judgment. The defend-

[1] Carole Berube.

[2] The rule provides that "[o]n motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect . . . ."

ant asserts that the judge made an error of law and abused his discretion by the allowance of the motion and the restoration of the case to the trial list. We rule under the circumstances of this case that the judge's action was justified.

We summarize the facts necessary to frame the main procedural issues. In early 1975 the plaintiffs, by their amended complaint, asserted claims against the defendant for tortious interference with advantageous business relations and the intentional infliction of emotional distress as a result of, and subsequent to, the defendant's termination of the male plaintiff's employment as a liquor salesman. The action was scheduled and noticed for trial in the Superior Court in January, 1978. All parties were apparently prepared for trial at that time, but as a result of the state of the list during that month, the case was not reached. The defendant next requested the setting of a date certain for trial.[3] An order was entered, with notice to both parties, establishing May 15, 1978, as the trial date under sanction of dismissal. On the scheduled trial date, the defendant appeared with its out-of-State witness, ready for trial. On that day, however, another lawyer appeared on behalf of the plaintiffs and requested a continuance on the basis that principal counsel who would try the case was ill and could not proceed. The judge in the trial assignment session allowed the requested continuance, conditioned on the plaintiffs' reimbursement of reasonable costs incurred by the defendant's witness.[4] On May 23, 1978, the plaintiffs' coun-

---

[3] The reason for this request was the fact that the defendant had to bring in a witness from outside the Commonwealth.

[4] The order provided that "[t]he action is to be dismissed if above moneys are not paid within thirty (30) days of the date of approval" of the costs incurred. Principal trial counsel for the plaintiffs had notified the court by letter filed in the clerk's office on May 8, 1978, that he was under doctor's care for a "condition which is very serious" and that he would not be able to try a case for "approximately one

sel filed a motion to revoke the order directing the payment of costs. On June 22, 1978, the judge approved the bill of costs submitted by the defendant in the amount of $371.51, and denied the plaintiffs' motion seeking to revoke the order, thereby triggering the thirty-day period for payment. On July 17, 1978, the plaintiffs filed a notice of appeal from the order directing payment of costs. On July 25, 1978 (one day after the payment of the costs was due[5]), counsel for the parties appeared in a motion session concerning a contested aspect of discovery in the case. On that date, a judge other than the one who had assessed the costs, after disposing of the discovery motion, learned that the costs had not been paid. This judge directed the defendant's counsel to prepare immediately an affidavit regarding the nonpayment of the costs and a motion for entry of judgment. The defendant's counsel prepared a handwritten affidavit and motion, and the judge directed the entry of a judgment dismissing the action. Two days later the plaintiffs applied to have the judgment vacated; the same judge who had directed the entry of the judgment denied the motion summarily and without a hearing. On July 31, 1978, the costs were paid in full. On August 8, 1978, the plaintiffs' counsel moved under Mass.R.Civ.P. 60 (b) (1) for relief from the judgment.[6] The judge who had assessed the costs heard and allowed the rule 60 (b) (1) motion, over the defendant's objection, and made express findings as to the reasons for the allow-

month." The defense apparently took the position that he would not assent to a continuance unless a formal motion for continuance were filed with the court and allowed.

[5] Apparently the parties concluded that even though the amount of the costs had been approved on June 22, 1978, the thirty-day time period for payment would not commence running until June 24, 1978, with a two-day period for formal notification to be sent by the clerk's office to counsel.

[6] He also moved at the same time to enlarge the time for compliance with the order assessing costs, although the costs had already been paid in full.

ance.[7] The defendant filed a petition for review under the first paragraph of G. L. c. 231, § 118. A single justice of this court denied plenary relief but authorized the defendant to prosecute an interlocutory appeal from the order granting relief from the judgment. *Foreign Auto Import, Inc.* v. *Renault Northeast, Inc.*, 367 Mass. 464, 470 (1975). *Mansfield* v. *GAF Corp.*, 5 Mass. App. Ct. 551 (1977).

Rule 60 (b) (1) permits a judge of the Superior Court to relieve a party from the effect of an otherwise final judgment for reasons of "mistake, inadvertence, surprise, or excusable neglect." The rule, like its predecessor, the petition to vacate judgment, provides a procedure for removing the burdens of a judgment where the interests of justice and fairness require relief. *Pulliam* v. *Pulliam*, 478 F.2d 935, 936-937 (D.C. Cir. 1973). The exercise of the power to grant relief from a judgment rests within the sound discretion of the judge, which is to be applied "toward the objective that legal procedure becomes the vehicle for determination of the issues upon their merits instead of upon refinements of procedure . . . ." *Florida Investment Enterprises, Inc.* v. *Kentucky Co.*, 160 So.2d 733, 736 (Fla. App. Ct. 1964). Rule 60(b) is remedial in character and subject to a liberal interpretation and application in a situation where the mischief leading to the judgment occurs at the pretrial stage. In addition, the rule has been said to contemplate an equitable balancing of interests in determining the merits of a motion brought under its provisions. *Manos* v. *Fickenscher*, 62 A.2d 791, 792-793

---

[7] The judge found that the actions of counsel fell into the category of excusable neglect and expressly found that "on the circumstances here where plaintiffs' counsel was under some medical disability during parts of the periods involved, and was for a period, involved in a murder trial and further, albeit late, the costs assessed were paid . . ." relief should be granted. The judge had been involved with the case from the outset and had acted upon most of the contested motions. He relied upon statements of fact contained in the brief of the plaintiffs' counsel as true and "incorporated the brief into the record in lieu of an affidavit."

(D.C. 1948), *Orange Transp. Co.* v. *Taylor,* 71 Idaho 275, 280 (1951). *Kohlbeck* v. *Handley,* 3 Ariz. App. 469 (1966). See also discussion in Smith & Zobel, Rules Practice § 60.7 (1977).[8]

An equation for determining when relief should be granted under the rule for excusable neglect attributable to conduct by counsel for a party cannot be stated in categorical terms. The cases have been divided on exactly what neglectful conduct of an attorney will be excusable.[9] In the last analysis, the question whether relief should be granted for excusable neglect is a question which requires a case by case assessment of the circumstances. As a result, we think it is important in reviewing action on motions of this type that the record be measured against a consideration, among other relevant circumstances, of at least the following factors: (1) whether the offending party has acted promptly after entry of judgment to assert his claim for relief therefrom; (2) whether there is a showing either by way of affidavit, or otherwise apparent on the record, that the claim sought to be revived has merit; (3) whether the neglectful conduct occurs before trial, as opposed to during, or after the trial; (4) whether

---

[8] The defendant relies heavily on the statements of Chief Justice Rugg in *Alpert* v. *Mercury Publishing Co.,* 272 Mass. 43, 45 (1930), that petitions to vacate judgment should be allowed "sparingly" and "only to promote the ends of justice, and not to relieve against slovenly preparation or other conduct not dictated by fidelity to the courts." That case involved a discontinuance by the plaintiff on the eve of trial when a late claim for a jury was denied, and the commencement of a second action with a jury demand which was subsequently dismissed. The circumstances there indicated a definite attempt to subvert the earlier ruling, and we find the facts clearly distinguishable from the facts here.

[9] The divergent results of the cases that have been decided under the counterpart Federal rule (Fed.R.Civ.P. 60[b][1]) are collected in 11 Wright & Miller, Federal Practice and Procedure § 2858 (1973). See also Restatement (Second) of Judgments § 115, Reporter's Notes to Comment b (Proposed Tent. Draft No. 6, 1979) and cases cited therein; Kane, Relief From Federal Judgments: A Morass Unrelieved by a Rule, 30 Hastings L.J. 41 (1978); Annot., 21 A.L.R.3d 1255 (1968).

the neglect was the product of a consciously chosen course of conduct on the part of counsel; (5) whether prejudice has resulted to the other party; and (6) whether the error is chargeable to the party's legal representative, rather than to the party himself; for "the courts have been reluctant to attribute to the parties the errors of their legal representatives." *Barber* v. *Tuberville*, 218 F.2d 34, 36 (D.C. Cir. 1954). See also *Maki* v. *New York, N.H. & H.R.R.*, 293 Mass. 223 (1936).[10]

We now appraise the defendant's contentions in the light of these standards.

1. The defendant first argues that the judge committed an error of law by his allowance of the motion. The argument in this regard is that no basis existed for the judge to exercise his discretion for two reasons: (1) plaintiffs' counsel in failing to pay the costs acted not out of neglect, but in pursuit of a conscious decision to avoid payment; and (2) no showing was made in support of the motion that the action was meritorious.

The notice of appeal from the order assessing the costs was, of course, a nullity. The order was interlocutory in character, thus, not appealable as of right; yet plaintiffs'

---

[10] We recognize that there is respectable authority for the proposition that the negligence of a lawyer should not, except under extraordinary circumstances, be found excusable and that the negligence when it occurs should be attributed to the client. See *United States* v. *Erdoss*, 440 F.2d 1221, 1223 (2d Cir. 1971); *Universal Film Exchanges, Inc.* v. *Lust*, 479 F.2d 573, 576-577 (4th Cir. 1973); *Brown* v. *E.W. Bliss Co.*, 72 F.R.D. 198, 199-200 (D. Md. 1976) ("a trial court should adopt no ... solicitous attitude for the client of a defaulting attorney .... [T]he time has come for lawyers to be responsible for their mistakes and their lack of attention to their professional responsibilities"). A categorical application of such a philosophy, far from reducing trial congestion, will probably increase it by replacing the dismissed action with a new action for malpractice. As a result several circuits have approached the entire problem of granting relief from judgments with a liberal attitude. See *Tozer* v. *Krause*, 189 F.2d 242 (3d Cir. 1951); *Consolidated Gas & Equip. Co. of America* v. *Carver*, 257 F.2d 111, 114 (10th Cir. 1958); *Rooks* v. *American Brass Co.*, 263 F.2d 166 (6th Cir. 1959); *Hutton* v. *Fisher*, 359 F.2d 913 (3d Cir. 1966); *Dormeyer* v. *M.J. Sales & Distrib. Co.*, 461 F.2d 40 (7th Cir. 1972).

counsel did not file a petition, seeking relief from the order or for leave to take an interlocutory appeal, under the first paragraph of G. L. c. 231, § 118, nor did he request that the judge report his order under the third paragraph of G. L. c. 231, § 111, Mass.R.Civ.P. 64, 365 Mass, 831-832 (1974). Despite these lapses, the record in our view does not compel a conclusion that plaintiffs' counsel engaged in a conscious strategy designed to disobey the judge's order or otherwise frustrate the progress of the litigation. The motions by plaintiffs' counsel to revoke the order as to costs or to enlarge the time for payment are consistent with an effort to obtain some relief from the order at the trial level. The judge's finding that the plaintiffs' principal counsel was under a medical disability and unavailable when the costs were imposed supplies the motivation for the effort to seek review of the order. The motions seeking relief from the costs reflect on the meaning of the futile notice of appeal. The circumstances, taken together, may well have indicated to the judge a confused and inept attempt to have the order as to costs reviewed in the hope that it would be abated in whole or in part.[11] The whole of the conduct was also suffused with a demonstrable ignorance of the rules of appellate practice,[12] since once the error was discovered the costs were promptly paid. We rule on the entire record that the judge was correct in declining to treat the conduct as part of a design to flout the court's order.

---

[11] Consider these comments: "The desire to seek immediate appellate review of a lower court interlocutory order is, of course, a common one. The adversary system being what it is, almost every interlocutory order of the lower courts produces a lawyer who feels his client has been injured. Not infrequently, this feeling assumes such a transcendent character that the lawyer seeks some avenue by which he can immediately communicate this sense of wrong to a higher court with jurisdiction to do something about it." Henn, Civil Interlocutory Appeals in the Massachusetts State Courts, 62 Mass.L.Q. 225 (1977).

[12] The area of interlocutory appeals has been characterized as a subject of confusion and misunderstanding. "Few subjects seem to be more misunderstood among Massachusetts lawyers than that of interlocutory appeals . . . ." Henn, supra at 225.

We also find that there was enough in the record to permit the judge to conclude that the action had merit. The standard in this regard does not require a showing of certainty of success. All that is necessary is an indication that the claim is one "worthy of judicial investigation because raising a material question of law meriting discussion and decision, or a real controversy as to essential facts arising from conflicting or doubtful evidence." *Russell* v. *Foley*, 278 Mass. 145, 148 (1932). See also *Anderson* v. *Goodman*, 341 Mass. 704, 705-706 (1961). The judge who had passed upon the rule 60 (b) (1) motion appears from the docket to have been involved with almost every pretrial motion argued in the case. We are not prepared to say that the absence of a finding as to a meritorious claim is automatically fatal to a motion of this type. While such a finding would be desirable, it appears from the judge's familiarity with the case, the extensive discovery that had been transacted, and the fact that on at least one occasion the parties were prepared to empanel a jury and put the issues to trial, that the action was one worthy of further judicial inquiry.

2. The defendant next argues that the judge's allowance of the motion constituted an abuse of discretion. We disagree. The exercise of discretion in this area involves the "absence of arbitrary determination, capricious disposition, or whimsical thinking." *Davis* v. *Boston Elev. Ry.*, 235 Mass. 482, 496 (1920). More recently, discretion in this context has been styled as the avoidance of "idiosyncratic choice . . . [with the decision] taking account of several incommensurable factors, some relating to the particular case and others to the larger system of administered justice." Restatement (Second) of Judgments § 122, Comment g (Proposed Tent. Draft No. 6, 1979).[13]

[13] The Restatement amplifies on the factors to be considered in this fashion: "The factors relating to the particular case include the magnitude and consequences of the judgment, the relative clarity with which it appears that the judgment was unjust, the relative fault of the parties, . . . the requirements of diligence . . . and the equities in the

See *Weitz* v. *Yankosky*, 63 Cal. 2d 849 (1966). See also discussion and cases collected at 11 Wright & Miller, Federal Practice and Procedure § 2857 (1973). Compare *Ackermann* v. *United States*, 340 U.S. 193 (1950), with *Klapprott* v. *United States*, 335 U.S. 601 (1949). Moreover, the majority of cases decided under rule 60(b) since its adoption in the Commonwealth have shown a marked deference to the decision reached by lower court judges reflecting, in our opinion, a policy that the judges in the motion and assignment sessions are in the best position to assess the merits of requests for this type of relief under the requirements of balancing efficient case flow with the litigants' rights to a trial on the merits. See *Trustees of Stigmatine Fathers, Inc.*, v. *Secretary of Admn. & Fin.*, 369 Mass. 562, 565 (1976); *Schulz* v. *Black*, 369 Mass. 958 (1975); *Alaimo* v. *Fredette*, 4 Mass. App. Ct. 866 (1976); *Forte* v. *Muzi Motors, Inc.*, 5 Mass. App. Ct. 700, 701-702 (1977). Here the judgment of dismissal was entered in some haste, and an immediate effort to vacate it was denied summarily and without a hearing. The costs were paid within a week of their due date. Plaintiffs' counsel was prepared for trial at least once, and was ill on the second occasion that the case was reached. During a portion of the period involved, counsel was under a medical disability and later was engaged in a murder trial. The record indicates the presence of a real controversy. Furthermore, the judge who allowed the motion had been involved with several phases of the action's development and undoubtedly was aware that its restoration to the

interests of reliance. Factors relating to the system of justice are the degree of diligence and competence expected of counsel (since many of the cases involve lapses on their part), the extent to which the court should rely on the adversary presentations in contrast with seeking a just result on its own initiative, the balance to be struck between finality and correctness of judgments, and the distribution of responsibility for deciding upon relief between the trial court and the appellate court." Restatement (Second) of Judgments § 122, Comment g (Proposed Tent. Draft No. 6, 1979).

trial list would not disrupt the administration of justice in the county. Finally, there was slight, if any, prejudice to the defendant as a result of the granting of relief. All in all, we find that the judge's ruling was fair and made upon adequate consideration of several mitigating factors and the standards set forth above. Accordingly, we discern no abuse of discretion, although we would also have found no abuse of discretion if the judge had refused to allow the motion.

*Order allowing motion for relief*
*from judgment affirmed.*