Concurring In Part, Dissenting In Part Opinion
Shubow, J.
Concurring in party and dissenting in part. To the extent
the effect of the major decision is to remand the case for further *24 consideration by the trial judge, I concur. I dissent, however, from the substantive conclusion that the trial judge erred in vacating a default judgment in the sum of $24,660.80 entered within weeks of original service given that the defendant promptly moved for relief four days after issuance of execution. I dissent, also, from the unwillingness of the majority to recognize that interlocutory review in this case was inappropriate and finally, from its failure to consider the lateness of the appellant’s claim of report.
1. The majority’s decision is tantamount to a determination that as a matter of law a trial judge cannot use his discretion under Dist./Mun. Cts. R. Civ. P., Rule 60 to vacate a default judgment entered for failure to answer, where it appears that the defendant’s only sin is short-lived, unplanned tardiness.
To reach its result, the majority has acted contrary to the weight of authority, drawn only the flimsiest support from dicta in cases which almost universally uphold trial court discretion in like matters, overlooked facts clearly set out in the record and others fairly inferable, as well as disregarded procedural flaws in the proceedings.
The majority is also at odds with the recently expressed view of our colleagues on the Northern Division. “A default is an extreme sanction, . . . disfavored in the law, which runs counter to prevailing judicial preference for trials on the merits with full participation by all the parties.” Roberts v. Baines, 1985 Mass. App. Div. 219, 220 (decided October 29, 1985).
If this result stands, we reward hard-nosed lawyering seeking to capitalize upon the minor procedural tumbling of an adversary and encourage a turning away from tolerance for insignificant mistakes not. affecting the merits of a controversy.
A brief review of the procedural facts drawn from the Report and from the docket entries[2] aids analysis.
2/22/85 Service of summons.
2/18/85 Plaintiffs request for default and default -entered.
3/25/85 Default judgment for $24,660.80 entered.
4/4/85 Execution issued, including costs, for $24,712.05.
4/9/85 (This date from Report.) Defendant files motions seeking relief (including motion for removal of real estate attachment).
4/11/85 Aforesaid motions and “affidavit in *25 support”[3] docketed (emphasis supplied).
4/20/85[4] Trial court allows defendant’s motions seeking “removal” of judgment, vacating of default, permitting late filing of answer and removal of real estate attachment conditioned upon filing of $25,000 bond.
5/8/85 Plaintiff files request for report and draft report.
5/20/85 Defendant files surety bond in the amount of $25,000.
The majority appear to assume that the trial court acted solely on the basis of the unadorned oral argument of defense counsel that the defendant “ ‘neglected’ to turn the complaint over to its attorney before the running of the time for answer or other pleading.” The opinion goes on to conclude “No other evidence or representation was submitted to the court to describe the nature of the defendant’s neglect.” But this ignores the chronological sequence of events and the close proximity of them to one another. Since no requests for rulings were filed by the appellant, the judge was not called upon to set forth his factual findings. We are entitled to assume that his presumed “general finding” that the defendant’s neglect was excusable rested on adequate subsidiary facts. This is elementary. The burden is on the appellant to show the contrary. The most that the report suggests is that defendant’s oral argument was insufficient to justify the court’s action. But the court had additional facts available to it, appearing in the report and thrown into sharp relief by the docket. It was open to the court to find that the negelct was de minimis because of the promptness with which the defendant acted (five days or less). We are not told what the affidavit which persuaded the judge to vacate the real estate attachment contained.[5] Those facts may well be the ones which carried the day for the defendant on all motions. Our precedents require us to assume that the judge made all the subsidiary findings, on available evidence, necessary to support his conclusions. A general finding of a trial judge imports a further finding of all subsidiary facts and the drawing of all rational inferences essential to support the general finding. Berman v. Tyburski Electric Company, Inc., 57 Mass. App. Dec. 189, 195 (1976). There is no reason why this general rule does not apply to the factual determinations underlying motions. If the evidence was insufficient it was incumbent upon the appellant to show that by appropriate requests for rulings. See NOLAN, CIVIL PRACTICE § 956. • Notwithstanding the talismanic assertion that the report “contains all the evidence material to the question reported,” it is inconceivable that; *26 there was no discussion of a bond at the time of argument on the “relief” motions. The docket shows the decision to require a bond was entered on the day of argument. For aught that appears, the defendant offered in his argument to post a bond as security for any judgment subsequently obtained by the plaintiff. Such an offer could, of course, have been taken by the judge as adequate assurance that the defendant believed in his case and was asserting a meritorious defense. To phrase the matter differently, it was open to the judge on this record, carefully read, to treat the defendant’s “neglect” as excusable because it was of short duration and the request for relief not dilatory nor frivolous because of the bond. It goes without saying that the bond strengthened the plaintiffs prospects of a meaningful recovery and to that extent assuaged any theoretical prejudice resulting from vacating of the judgment.
With all respect, I believe Berube v. McKesson Wine & Spirits Co., 7 Mass. App. Ct. 426 (1979), does not support the position of my brothers. As the majority opinion acknowledges, Berube teaches that at least six factors should be considered in appraising actions of a trial judge on motions under Rule 60(b) for relief from judgment. Here the offended party (1) acted promptly; (2) there is a showing either by way of affidavit or otherwise apparent on the record that the claim sought to be revived has merit; (3) the neglectful conduct occurred before trial: (4) the neglect was not the product of a consciously chosen course of conduct upon the part of counsel; and (5) no prejudice has occurred to the plaintiff.[6] In Berube, the court found “slight if any prejudice to the defendant as a result of the granting of relief’ (at p. 435). By comparison, the prejudice in the instant situation was even slighter. The closing words of Berube are “. . . we discern no abuse of discretion, although we would also have found no abuse of discretion if the judge had refused to allow the motion.” That formulation speaks volumes in expressing the need for respecting the discretion of the trial judge. Elsewhere (p. 429) the decision summonses trial judges to exercise their discretion “toward the objective that legal procedure becomes the vehicle for determination of the issues upon their merits instead of upon refinement of procedure. . . ”
The majority seem to conclude that one in default must “pass” each and every one of the Berube tests and thus denies the trial judge the discretion to weigh all of the factors giving each such weight as was called for under the circumstances. It goes without saying that the short life and pretrial nature of the defendant’s error would change the calculus involved in balancing the relevant factors such as the prejudice, if any, sustained by the plaintiff.
The cases on which the majority relies, generally speaking, were decisions upholding the exercise of discretion by the trial judge either granting or denying relief. None erected an absolute standard. I turn to the exceptions: Knapp v. Cramer, 1980 Mass. App. Div. 11. Its distinguishing circumstances will be apparent at once. Nearly two months after trial and judgment for the plaintiff in the sum of $750, a judge other than the trial judge allowed a motion to file appeal late (emphasis supplied). The opinion emphasizes the modest amount in controversy and understandably treated the motion judge’s act as an abuse of discretion. Frack v. Consolidated Fuels, Inc., 1980 Mass. App. Div. 190, is also distin *27 guishable.
Examination of the report to identify the error of law of which the appellant complains discloses only the contention that the plaintiff was “prejudiced by the court’s order since it must now litigate issues previously foreclosed by default judgment.” (R. p.4). But such a claim of theoretical prejudice, if recognized, would prevent any court from ever vacating a pretrial default. The law on this subject, as the majority abstractly recognizes, is clear. A motion to vacate judgment and allow filing of responsive pleadings late under Dist./Mun. Cts. R. Civ. P., Rule 60 (b) “is essentially a discretionary motion to be acted upon by the trial judge and may be overturned only where there has been an abuse of discretion” (emphasis supplied). Nickerson Lumber Company v. Cobb, 1981 Mass. App. Div. 193, 194 (Black, J.). The majority avoids characterizing the trial judge’s conduct as amounting to abuse of discretion. “An abuse of discretion consists of judicial action which no conscientious judge, acting intelligently and honestly could have taken. . . . Here the appellant has not even suggested any abuse of discretion.” Wolf v. C. Bain, Inc., 1983 Mass. App. Div. 365, 366. Where a party with respect to denial of a motion for a new trial filed no requests for rulings and claimed no abuse of discretion, no question of law was presented for consideration. Jancsy v. Hy-Land Realty, Inc., 58 Mass. App. Dec. 152, 155-159 (1976).
2. In addition to the absence of any requests for rulings [see Bushnell v. Bushnell, 393 Mass. 462, 475 (1984)] and any indication that the appellant has otherwise presented the particular legal issues he argues here to the trial judge, both generally preconditions for consideration of a cause by us, there is a more fundamental flaw. The action of the judge was interlocutory and generally notreviewable until the case was over. Krock v. Consolidated Mines & Power Co., 286 Mass. 177, 179-180 (1934).
In Pollack v. Kelly, 372 Mass. 469 (1977), the Supreme Judicial Court promulgated a definitive restatement of the reasons for rejecting interlocutory appeals.[7] The court reminds us of a consistent history of rejecting attempts to obtain piecemeal appellate review and of the needless burden of futile attempts to appeal interlocutory matters (p. 471). The court expressly ruled that “all of the same reasons” apply to appeals to the Appellate Division (p. 477). The reasoning embodied in Hart v. Keoveney, which defines allowance of a motion for relief from judgment as interlocutory, 1980 Mass. App. Div. 59, 59-60, is so clearly persuasive that it should have governed the actions of the trial judge and should now guide us. Nor does Chavoor v. Lewis, 383 Mass. 801 (1981), call for a different result. The court there recognized a possible exception to the ban on interlocutory appeals where the trial court was utterly without power, because of time constraints, to grant a motion to vacate judgment (p.803) but concluded that where the judge enjoyed discretionary power, the question of abuse of discretion remained within the ban on interlocutory appeals (p. 807, and fn.7).
The Rule [64 (d)] does permit voluntary reports by the trial judge, but only where serious questions are presented likely to be material in the *28 ultimate decision. See Barnette v. Commercial Union Insurance Company, 55 Mass. App. Dec. 3, 5-8 (1974). See NOLAN, CIVIL PRACTICE § 965, and cases cited. Moreover, if the report is correctly to be regarded as a voluntary report by the trial judge of an interlocutory matter, then it should have been accompanied “by a certificate of the judge that the matter so affects the merits of the controversy that it ought in justice to be determined by the Appellate Division before further proceedings are had.” Pokrant v. Horrigan, 20 Mass. App. Dec. 1, 2 (1960). No certificate has been filed. Even if the requirement of a certificate is not required under the current rules (but see PERLIN AND CONNORS, CIVIL PROCEDURE IN THE DISTRICT COURTS, 1980, p. 117, fn. 29) the judge is not authorized to report any interlocutory matter but only those that potentially affect the outcome of the case.
3. In footnote 3, supra, it was suggested that there lurks within the record the issue of whether this appeal was untimely claimed. In a case where the aggrieved party seeks to hold its opponent to strict compliance with the rules, its own conduct should be tested by the same strictness. Recourse to the docket entries to establish this fact is explicitly authorized by Microsonics, Inc. v. Comrex Corp., 39 Mass. App. Dec. 229, 233 (1968). In the present case, the action of the trial court challenged was taken, according to the docket, on April 20,1985. The plaintiff s request for report was filed on May 8,1985, and Draft Report on the same day. The rule fixes ten days as the time within which these actions must be taken (unless extended). “The trial court has no power to waive mandatory requirements for filing a timely request for a report and draft report.” Microsonics, supra, at p. 234.
In conclusion, I believe we could justifiably dismiss the report because the judge acted well within his discretion in view of (a) the trivial, harmless and short-lived nature of the defendant’s misstep, and (b) the protection afforded the plaintiff by the requirement of a surety bond.. However, because of the interlocutory nature of the subject matter, I believe it is more consonant with the precedents to recognize that the issue is prematurely before us. I therefore join in what seems to be the remand order of the court.

 Arguably, we should not look bey ond the four corners of the Report. But Rule 64(f) requires that the docket entries be furnished us and, it follows, be considered by us as appropriate. We may take judicial notice of our own papers. Dwight v. Dwight, 371 Mass. 424, 426 (1976). Earlier precedents have relied on docket entries. Microsonics, Inc. v. Comrex Corp., 39 Mass. App. Dec. 229, 232(1968); Third National Bank & Trust Company v. Stagnaro, 25 Mass. App. 58, 68 (1962). The majority contends that docket entries may be considered only for those purposes involved in the aforementioned cases. There has been no exhaustive treatment of the subject in our decisions. Common sense dictates that for procedural facts, indicating how and when the controversy was handled by the trial judge, the docket entries, if not themselves disputed, may provide a reliable store of information. They were relied on to support a supposed finding that a litigant had ample time to obtain representation in Springfield Photo Mount Company v. Kriensky, 1984 Mass. App. Div. 3, 4. See, also, Hi Lo Trailer Company v. Wright, 1980 Mass. App. Div. 188, 189. “A petition to establish a report is properly denied if neither the draft report sought to be established nor the docket entries evince any error of law. . . .” (emphasis supplied). Coen Marine Equipment, Inc. v. Kurker, 1983 Mass. App. Div. 221, 226.

 The Report (p. 2) indicates that the affidvit was filed in connection with the effort to vacate a real estate attachment.

 The docket entries indicate the court’s action was taken on a Saturday. If the date is correct, the request for report was late. The Report indicates the action of the court was taken on April 30, as does Exhibit F. However, the majority asserts the issues were argued before the court on April 20, 1985 (emphasis supplied). In Microsonics, Inc. v. Comrex Corp., 39 Mass. App. Dec. 229 (1968), it is suggested (p. 233) that docket entries control in the event of a discrepancy between the report and the docket.

 The majority incorrectly states with reference to the affidavit that “the trial judge in his report has explicitly excluded [it] from consideration.” What the report says is “(The defendant also filed a ‘Defendant’s Motion for Removal of Attachment’ with supporting affidavit. That motion is not the subject of this report.)” However, that is not to say that the facts recited in the affidavit, sufficient apparently to warrant removal of attachment, were not likewise sufficient to warrant vacating of the default.

 Only the defendant’s own early abbreviated span of passivity counts against it.

 In the course of doing so the court distinguished (fn. 3, p. 474) between the right of a party to appellate review by way of report and the voluntary report by a judge of a question of law. It is not necessary to determine into which category the present report falls. In either case it is premature. Where it was not clear whether a report was that of a party or a voluntary report of the judge, the case was remanded for clarification by the judge. Pokrant v. Horrigan, 20 Mass. App. Dec. 1, 3 (1960).