Gershengorn, J.
Plaintiff, IAG Federal Credit Union (“IAG”), brings this action, claiming a mortgage deficiency from the foreclosure sale of property owned by defendants, James N. Fripp and E. Anne Fripp. IAG secured default judgments against defendants for failure to file an answer and obtained an execution of those judgments.
Defendants now move to vacate the default judgments on the grounds that IAG improperly served them with the amended complaint and that they received notice of certain hearings after the hearing dates or not at all. For the reasons stated below, defendants’ motion is denied.
BACKGROUND
On May 6, 1988, defendants bought property located at 5 Sussex Street, Boston, Massachusetts, for $30,000. Defendants borrowed $75,000 from Progressive Consumers Federal Credit Union “Progressive”), $30,000 for the purchase of the house and $45,000 for repairs. Progressive agreed to advance the $45,000 for repairs in three installments provided it approved the defendants’ choice of a contractor. Defendants executed and delivered a promissory note for $75,000 plus interest to Progressive secured by a first mortgage on the 5 Sussex Street properly and a second mortgage on 69 Coleman Street, Boston, Massachusetts, where defendants were then living.
Progressive thereafter approved Bay State Masonry Company (“Bay State”) as defendants’ contractor and advanced the initial installment to defendants. Defendants requested that Progressive not advance the second installment because they were unsatisfied with Bay State’s performance. Progressive, however, advanced a second installment. After much discussion and the City of Boston’s declaration that 5 Sussex Street was uninhabitable, the parties agreed to terminate Bay State’s services and hire another contractor. Defendants, at this time, were current with their mortgage payments.
Defendants hired attorney, Diane Wilkerson (“Ms. Wilkerson”), the now senator, who met with Progressive on numerous occasions regarding 5 Sussex Street. Defendants informed Progressive that they were ceasing their mortgage payments pending resolution of the issues regarding the completion of 5 Sussex Street.
In 1991, Progressive went into receivership. Progressive initiated foreclosure proceedings on 5 Sussex Street and 69 Coleman Street; however, the foreclosure sale only included 5 Sussex Street, not 69 Coleman Street. Progressive bought 5 Sussex Street for $49,000 in June 1992.[2] Defendants claim that Progressive then informed them that no further monies were owed.
On January 31, 1994, the National Credit Union Administration liquidated Progressive and assigned defendants’ note to plaintiff, IAG Federal Credit Union (“IAG”). On January 13, 1997,[3] IAG filed a complaint against James Fripp.[4] IAG claimed that defendants owed it the amount of the mortgage deficiency resulting from the foreclosure sale of 69 Coleman Street.[5] IAG thereafter, on January 21, 1997, amended the complaint to add Anne Fripp as a defendant. On February 7, 1997, service of the amended complaint was returned, stating that both defendants had been served at their last and usual address, 69 Coleman Street, on January 31, 1997.
*653 Although defendants had not lived at 69 Coleman Street for seven years, a resident there received the amended complaint and informed Anne Fripp that mail had been left at 69 Coleman Street.[6] Anne Fripp obtained the amended complaint and notified her husband, James Fripp. Defendants allege that they contacted IAG and informed them that they owed no money and that they no longer lived at 69 Coleman Street and were living apart. Defendants claim that they gave IAG their respective addresses.
The Court does not credit defendants’ affidavits, which only state “upon information and belief’ that they informed IAG of their respective addresses. John Todisco, Jr. (“Todisco”), the attorney for IAG, on the other hand, has filed an affidavit stating that at no time did defendants inform him that 69 Coleman Street was not their correct address. The Court credits Todisco’s testimony by way of affidavit, particularly in light of the continued notification of court filings and orders sent to 69 Coleman Street, at least three of which were admittedly received by defendants, and defendants’ responses, through attorney Elsa M. Diaz-Alonso (“Alonso”), to documents sent to that address. Moreover, defendants failed to notify the Court of their new addresses.
On March 20, 1997, IAG filed a request for default against James Fripp for failure to answer. The Court allowed the default and sent notices on March 21, 1997 to 69 Coleman Street. Thereafter, on March 26, 1997, Alonso sent Todisco a letter, requesting certain documents and confirming a conversation they had that day during which Todisco agreed to a two week extension for Alonso to file an answer.[7] Alonso stressed that defendants wanted to avoid litigation. On April 15, 1997, Todisco provided Alonso with the documents she requested. Todisco sent Alonso another letter on May 21, 1997, noting that he received no reply to his April 15 th letter and that she should either offer settlement or file an answer by June 1, 1997, or he would move to default defendants.
On June 17, 1997, IAG requested a default against Anne Fripp for failure to answer, which the Court allowed. Notice of the default was sent to Anne Fripp at 69 Coleman Street.
A hearing for the assessment of damages was scheduled for October 2, 1997 and then rescheduled for October 28, 1997. On October 28, 1997, a damages hearing was held, and IAG requested that a default judgment be entered against James Fripp and Anne Fripp in the amount of $55,442.00 plus attorneys fees. Neither defendants nor Alonso appeared at the hearing. The Court entered the default judgment against James and Anne Fripp in the requested amount.[8]
On October 29, 1997, Alonso contacted Todisco, who informed her that she should take some action on behalf of defendants. Subsequently, Alonso notified Todisco, by letter dated November 5, 1997, that she received no notice of the hearing held on October 28 and that she, thus, intended to move for a rehearing. On December 2, 1997, Todisco, via letter, once again suggested Alonso take action, specifically request a rehearing, which he would not oppose.
On April 22, 1998, the Court entered a corrected default judgment. On May 4, 1998, execution of the default judgments were issued against both defendants. Subsequently, on October 20, 1998, the then resident of 69 Coleman Street notified James Fripp that a court notice was left at 69 Coleman Street. That notice stated that IAG received judgment and execution against defendants for the mortgage deficiency of 69 Coleman Street.
On December 3, 1998, IAG instituted supplementary process proceedings against defendants in District Court. Notice of a hearing was sent to defendants at 69 Coleman Street. James Fripp received that notice in late December from the then resident. On January 14, 1999, defendants appeared at the supplemental process hearing with a motion to dismiss and/or stay supplemental proceedings. Ultimately, the supplemental process was postponed.
Defendants filed the instant motion to vacate the default judgments on June 21, 1999, claiming that they had not received the documents served at 69 Coleman Street at all or only after pertinent hearing dates because they had not lived there since approximately 1990, although they were still the owners of that property.
DISCUSSION
Mass.R.Civ.P. 60(b)(1) provides that “(o]n motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for ... (I) mistake, inadvertence, surprise, or excusable neglect . . .” The allowance or denial of a Rule 60(b)(1) motion is addressed to the sound discretion of the judge. Bird v. Ross, 393 Mass. 789, 791 (1985); Berube v. McKesson Wine & Spirits Co., 7 Mass.App.Ct. 426, 429 (1979). “However, relief is granted under this section only if the party seeking relief demonstrates that the mistake, inadvertence, or neglect was excusable and ‘was not due to his own carelessness,’ Reporters’ Notes, J.W. Smith & H.B. Zobel, Rules Practice 462 (1977).” Murphy v. Adm’r of the Div. of Personnel Admin., 377 Mass. 217, 288 (1979). “It would not be the exercise of sound judicial discretion to vacate a judgment merely to relieve a party from the consequence of intelligent or intentional carelessness or laxity.. .” Russell v. Foley, 278 Mass. 145, 148 (1932).
After having considered the factors listed in Berube[9] and defendants’ passivity regarding the court process, this Court, in its discretion, will not vacate the default judgments. The Court finds and rules that defendants’ desultory conduct in failing to file an answer after having actual notice of the complaint against them and failing to file the instant motion for *654 almost twenty months after the default judgments had entered, allowing for the execution of those judgments to enter and for supplementary process to be instituted against them, compels a denial of defendants’ motion.
Notwithstanding defendants’ receipt of the amended complaint, as admitted by defendants, they failed to file an answer within the thirty day period provided for in the Rules of Civil Procedure or within the time allowed for by Todisco, who agreed to at least two extensions for defendants to file their answer. Although defendants no longer lived at 69 Coleman Street when IAG served its amended complaint on them, defendants did have actual notice of the amended complaint since a resident of 69 Coleman Street gave them the amended complaint. See Massey v. Cloutier, 26 Mass.App.Ct. 1003, 1003 (1988) (stating that “(i]n determining whether to exercise his discretion to reopen the case, the judge could properly take into account. . . the fact that the defendant had actual notice of the action prior to the default . . .”); Lumber Mut. Ins. Co. v. Centore, 1992 Mass. App. Div. 218 (1992) (holding that, in considering the motion to vacate, the judge was warranted in finding that defendant failed to file an answer after having actual notice of the complaint). See also Zorach v. Lenox Oil Co., Inc., 1996 Mass. App. Div. 11 (in deciding a motion to vacate, the court considered that, although plaintiff may have improperly served defendant, the defendant was aware of the litigation at an early stage). Moreover, defendants failed to notify IAG or the Court of their new addresses and that they were no longer receiving mail at 69 Coleman Street. In fact, after defendants received the complaint, Alonso, on behalf of defendants, was in contact with IAG and had obtained extensions for filing an answer so that she might discuss settlement opportunities with defendants.
Even assuming defendants, as they claim, notified IAG of their new addresses, they continued to contact IAG, through Alonso, regarding the complaint and/or time for filing the answer. Further, defendants became aware of the entry of defaults and the hearing for the assessment of damages (even if, as defendants claim, after the hearing date), and participated in the further proceedings instituted against them, that is, the supplementary process proceedings. Thus, regardless of whether defendants informed IAG of their new addresses, defendants responded to the amended complaint, although not with an answer, and were aware of the resulting defaults, execution of those defaults, and the supplementary process, and still did nothing to remove those defaults until June 21, 1999.
Any argument that it was Alonso’s neglect and not their own which caused the default judgments to enter is belied by the fact that even after having notice of the defaults and entry of the default judgments against them, whether received before or after any pertinent hearing dates, defendants failed to question Alonso’s failure to file an answer, which filing would have protected their rights while allowing them time to further discuss possible settlement. Therefore, any neglect or inadvertence was attributable to defendants and was not excusable. See Bird, 393 Mass. at 791 -92. Contrast Berube, 7 Mass.App.Ct. 426 (error attributable to plaintiffs counsel). The Court will not “encourage carelessness, ignorance, laxity or finesse of practice in the courts.” Hackney v. Butler, 339 Mass. 605, 609 (1959), quoting Alpert v. Mercury Publishing Co., 272 Mass. 43, 45 (1930).
Moreover, the Court entered default judgments against defendants on October 28, 1997. Defendants did not file the instant motion to vacate those judgments until June 21, 1999, almost twenty months later, after execution of those judgments had entered and after supplementary process had been instituted against defendants. See Cicchese v. Tape Time Corp., 28 Mass.App.Ct. 72 (1989) (among other factors, defendant delayed six months before filing its motion to vacate); Zorach, 1996 Mass.App.Div. (defendant filed its motion to vacate nine months after the default judgment had entered). Defendants’ complete disregard of the legal process instituted against them (of which they had notice) and failure to inquire of Alonso why such process continued, resulting in the entry of defaults, default judgments, and execution of those judgments as well as in supplementary process being brought against them, compels this Court, in its discretion, to deny defendants’ motion.
Assuming, without deciding, that defendants’ defenses were meritorious,[10] defendants are not “per se entitle(d) ... to relief from judgment, or [relieved of) the Rule 60(b)(1) requirement [to make] a threshold showing of neglect or inadvertence which was excusable.” Lumber Mut. Ins. Co., 1992 Mass.App.Div. 218. Defendants failed to make such a threshold showing. In light of all the circumstances in this case, vacation of the judgments would be appropriate as the facts compel me to find defendants willfully failed to pursue their legal obligations.
ORDER
It is hereby ORDERED that defendants’ Motion to Vacate Judgment is DENIED.

 In 1993, Progressive resold 5 Sussex Street for $39,000.

 The dates relating to the filing and serving of court documents are taken from the docket.

 Defendants claim that the original complaint against James Fripp was dated January 9, 1996 and that IAG, therefore, filed its original complaint more than one year later. However, the original complaint and the court docket demonstrate that the original complaint was filed with the Court on January 13, 1997; and, thus, IAG filed its amended complaint approximately one week later.

 The 5 Sussex Street property, not the 69 Coleman Street property, was sold at the foreclosure sale. However, the error in the complaint does not compel the Court to vacate the default judgment. See discussion, infra.

 The parties do not dispute that defendants did not designate any resident at 69 Coleman Street as their agent to receive process on their behalf.

 Todisco claims that he and Alonso had a prior conversation on February 18, 1997, during which he agreed to extend the time within which Alonso had to file an answer to March 5, 1997. Alonso denies that this conversation ever occurred.

 The default judgments were entered on the docket on October 29, 1997.

 The Berube court states that courts, when making a determination as to a motion to vacate a default judgment, should consider, among other factors,
(1) whether the offending party has acted promptly after entry of judgment to assert his claim for relief therefrom; (2) whether there is a showing either by way of affidavit, or otherwise apparent on the record, the claim sought to be revived has merit; (3) whether the neglectful conduct occurs before trial, as opposed to during, or after the trial; (4) whether the neglect was the product of a consciously chosen course of conduct on the part of counsel; (5) whether prejudice has resulted to the other party; and (6) whether the error is chargeable to the party’s legal representative, rather than to the party himself. . .
Berube, 7 Mass.App.Ct. at 430-31.

 Defendants claim that they were improperly served; that the deficiency, if any, did not result from the foreclosure sale of 69 Coleman Street, as alleged in the complaint, but from the sale of 5 Sussex Street; that IAG failed to serve them with the notices required by G.L.c. 244, §17B; and that the amount of the judgment was in excess of what Progressive would have received had it not informed defendants no further monies were owed.