Wheatley, PJ.
The plaintiff (Randall), the brother-in-law of Jason Rapoza (Rapoza) and an investor in the defendants’ business of dealing in antiques, sued both defendants for breach of contract, and to enforce a promissory note given by Rapoza, for money loaned to them. Because they failed to answer the complaint, they were defaulted and an execution issued. It is from the denial of the defendants’ motion to vacate the default judgment that the defendants have filed this appeal under Dist/Mun. Cts. RA.D.A, Rule 8C. We find no error and affirm the trial judge’s finding.
On October 14,1999, Randall filed a complaint in the Plymouth Division of the District Court Department alleging that on divers dates he had lent monies to both defendants to assist them in purchasing estate assets, and that they agreed to resell the assets and repay Randall his initial investment plus a profit, that all parties agreed that all initiál money invested had been repaid, and that the profits due and owing to Randall totaled $100,000. Randall further alleges that Rapoza gave a check to him for the $100,000 which bounced, and then signed and delivered, as a substitute for the check, a $100,000 promissory note, also the subject matter of this suit
The record reflects a last-and-usual service on Rapoza and an in-hand service on Raynham Marketplace Antiques, Inc. (Raynham) on October 28,1999. On December 13,1999, no answers having been filed, Randall requested a default judgment which the court allowed on December 21, 1999, for $100,000, plus interest of $2,235.62 and costs. An execution, which issued on January 3, 2000 for $102,860.48, was served on the defendants and returned unsatisfied. On March 1, 2001, the defendants filed a motion to vacate default judgment which, after hearing on April 5, was denied.
In an affidavit accompanying the motion, Rapoza stated the following: Upon receiving notice of the suit he gave the summons and complaint to his attorney to respond and he understood that the required answers had been filed. He did not know of the entry of the default judgment until the deputy Sheriff served him with the execution. He had received $53,000[2] from Randall and repaid $92,500 to him in the period from December, 1996 to November, 1998. Because of marital difficulties *154 and the effects of taking Paxol in that connection, he was not “thinking straight,” and he believed that Randall was aware of these facts and took advantage of them. In Jtdy, 1999, in response to Randall’s statement that he, Rapoza, still owed him $100,000, he gave him a check for that amount, “because of [Randall’s] attitude and demeanor.” Even though he told Randall that there was not enough money in his account to cover the check, Randall, though he agreed just to hold the check to “protect his position,” nevertheless cashed it and it bounced. Randall then insisted that Rapoza sign a promissory note for $100,000, which he did. “I did as plaintiff requested in these matters because of his harassment He has continued to harass me by way of telephone calls.... At the time plaintiff insisted on the check and the subsequent promissory note, he was aware that he had received all monies due him.... [Pllaintiffs complaint contains the same fraudulent misrepresentations. ... It is my belief that if the default judgment is vacated, defendants will prevail in this matter.” Of the nine checks which Rapoza says were payments to Randall, some are made payable to “Gary Randall” and some to “Coastal Utilities Corp.,” assumedly Randall’s business; the last six carry the notation “owner’s draw.” All but one, a treasurer’s check, are paid on checks from Raynham’s operating account
Accompanying a motion to stay, filed before the motion to vacate but never heard, was an affidavit made by Rapoza’s attorney stating that she drafted answers for the defendants and she believed that they had been filed with the court, that she was at the time handling a number of matters on behalf of the defendants, that, when she received the Sheriffs demand letter from her client, she reviewed her files and realized that the answers had not been filed or served, and that the failure to file the answers was “due to mistake and inadvertence by counsel and was not due to inaction by the defendants. The defendants have a meritorious defense to the action.”
Randall, by way of affidavit at the same time, asserts: Rapoza is in the business of buying and reselling estates through several antique stores, one of which is Raynham. From December, 1996 through July, 1998, he lent money to the defendants, with the understanding that they would buy estate assets, resell them and pay him his initial investment plus a profit In September of 1998, he requested that the defendants “cash me out,” and requested the return of his investment plus his profits. He received all initial money invested, and agreed with Rapoza in July of 1999 that profits due him totaled $100,000. Rapoza gave him a check in that connection which bounced in August Rapoza once again acknowledged his debt and substituted the note in question for the bad check. The note for $100,000, together with interest at 18% was to be paid thirty days from the date of signature, August 2, 1999, but was not The note was signed by Rapoza in the presence of a Notary.
Mass. R. Civ. E, Rule 60(b)(1), permits a judge to relieve a party from the effect of an otherwise final judgment, in this case a default judgment, for reasons of “mistake, inadvertence, surprise, or excusable neglect... where the interests of justice and fairness require relief.” Berube v. McKesson Wine & Spirits Co., 7 Mass. App. Ct. 426, 429 (1979), citing Pulliam v. Pulliam, 478 F.2d 935, 936 (D.C. Cir. 1973). Whipple, Inc. v. DeHaart, Inc., 1999 Mass. App Div. 78, 79. The decision on such a motion is in the sound discretion of the trial judge and will not be reversed on appeal unless there is an abuse of discretion. Burger Chef Systems, Inc, v. Servfast of Brockton, Inc., 393 Mass. 287, 289 (1984); Atek, Inc. v. Henry, 1999 Mass. App. Div. 26. However, the standard for appellate review of an exercise of judicial discretion is not substituted judgment Coady v. Stack, 1995 Mass. App. Div. 135, 137; Bucchiere v. New England Tel. & Tel. Co., 396 Mass. 639, 641 (1986); Bird v. Ross, 393 Mass. 789, 791 (1985); Nabhan v. Board of Selectmen of Salisbury, 12 Mass. App. Ct. 264, 271-272 (1981), “... Judges in the motion and assignment sessions are in the best position to assess the merits of requests of *155 this type of relief.” Berube, supra, at 434.
The Berube court, supra, noted that the determination as to when relief should be granted under the rude must be on a case-by-case basis, and cited six basic factors for consideration:
(1) whether the offending party has acted promptly after entry of judgment to assert his claim for relief therefrom; (2) whether there is a showing either by way of affidavit, or otherwise apparent on the record, that the claim sought to be revived has merit; (3) whether the neglectful conduct occurs before trial, as opposed to during or after the trial; (4) whether the neglect was the product of a consciously chosen course of conduct on the part of counsel; (5) whether prejudice has resulted to the other party; and (6) whether the error is chargeable to the party’s legal representative, rather than to the party himself....” Berube, supra, at 430-431.
Although the trial judge made no findings of feet, he had before him the three affidavits. Except for a newspaper article about Rapoza and other matters,[3] there was no further evidence offered during the hearing. The defendants contend that the affidavits of Rapoza and his attorney demonstrate that they have a meritorious defense to the complaint We do not adopt their contention, and do not, therefore, in this decision reach the issues of mistake or excusable neglect Specifically, they argue that, because the affidavits show that Randall received $92,500 for his $53,000 investment Randall obviously was owed nothing further. However, with no other evidence of the exact details of the original agreement among the parties, such is not obvious. In fact, the evidence bears out the opposite. The notation on the latest repayment check of “owner’s draw” could reasonably support the probability that, however much, further monies were still due under their original agreement After the partial payments, Randall said that $100,000 was still due. In response to this, rather than a denial, Rapoza, the principal and only representative of the corporate defendant, signed and delivered a check to Randall for $100,000. Further, when the note check bounced, he signed and delivered a substitute promissory note for the same amount thus confirming the amount due.
Regarding the claim under the promissory note, the Massachusetts Uniform Commercial Code, G.L.c. 106 (UCC), is controlling. Guenin v. Benson, 1999 Mass. App. Div. 94. Rapoza, as the signer of the note wherein he promised to pay Randall, is the maker of the note, and as such undertakes to pay it according to its terms. G.Lc. 106, §3-103(5); Comment 1, §3-104. Once the signature is admitted and the note is produced, the holder is entitled to payment, unless the defendant proves a defense of, inter alia, duress. Id. §§3-308(b), 3-301, 3-305(a) (1) (iii). On the subject of duress, the authors of Comment 1 under §3-305 cite, as examples, signing a note *156 at the point of a gun (note is void), or under the threat to prosecute for theft (note is voidable). To avoid a contract on the basis of duress, a party must show that conduct by the other party caused him to enter into the contract “under the influence of such fear as precludes him from exercising free will and judgment” Coveney v. President & Tr., College of the Holy Cross, 388 Mass. 16, 22 (1983). To show economic duress a party must show that he has been the victim of a wrongful or unlawful act or threat, and such act or threat must be one which deprives the victim of his unfettered will. As a direct result of these elements, the party threatened must be compelled to make a disproportionate exchange of values. Int’l Underwater Contr. v. New Eng. Tel. & Tel., 8 Mass. App. Ct. 340, 342, 393 N.E.2d 968 (1979). The defendants explain the existence of the check and the note as products of duress, written “because of [Randall’s] attitude and demeanor” and his “harassment”[4] and insistence. He also cites “marital difficulties” and not “thinking straight” as a result of taking Paxol. These conclusions with no further definition or other evidence fall far short of painting a picture of duress on the part of Randall. The motion failed to set up any facts from which the judge could have inferred the existence of a meritorious defense to any of the claims asserted in the complaint His decision was not an “arbitrary determination, capricious disposition or whimsical thinking.” Berube, supra, at 433. The denial of the motion, therefore, did not result from any abuse of discretion. Old Colony Bank & Trust Co. v. Tacey Tspt., 10 Mass. App. Ct. 825, 826 (1980).
Accordingly, we affirm the trial judge’s denial of the motion to vacate the judgment and dismiss this appeal.
So ordered.

 At the hearing on the motion to vacate judgment, Rapoza’s counsel acknowledged that Randall had put $63,000 into the defendants’ business, not $53,000.

 Randall’s attorney, during his argument at the motion hearing, referred to a newspaper article, included with his opposition, which detailed Rapoza’s arrest on the charge of bilking investors across the country of more than $170,000 in an antiques-buying scam similar to the case at bar. Rapoza had been accused of taking investors’ money on the promise of buying and reselling estate assets for a quick profit, and keeping the money or issuing bad checks. This article was brought to the judge’s attention with no objection or argument by Rapoza’s counsel. Rapoza now argues for the first time that this evidence unfairly prejudiced the judge in his decision. Even though we have no idea from the record whether the trial judge considered the article or not, he had ample reason, as do we, to find independently that Rapoza had no defense to the suit on the note. We, therefore, reject this argument

 Rapoza adds that “... [Randall] has [after the signing of the documents] continued to harass me by way of telephone calls....” Even if this statement were taken as true, it relates only to events that took place after the signing of the check and the note, and, as such, has no relation to any claim of duress effective when the documents were signed.