JOHN D. SCANNELL & another[1] *vs.* ED. FERREIRINHA &
IRMAO, LDA.

Plymouth. January 8, 1987. — February 4, 1987.

Present: ARMSTRONG, CUTTER, & FINE, JJ.

*Practice, Civil,* Default, Relief from judgment, Judicial discretion, Bond.
*Judgment,* Relief from judgment.

Where the record in a civil action indicated that the defendant, a Portuguese
corporate entity, had been seriously misled and confused because of
language problems, difficulties in international communication, and lack
of familiarity with legal procedures in the United States, it was, in the
circumstances, an abuse of discretion for the judge to order entry of a
default judgment instead of affording the defendant sufficient time to
obtain new counsel and prepare its case after its liability insurer, whose
attorneys had acted on the defendant's behalf until shortly before the
date appointed for trial, declined to take any further action in defending
the case. [469-470]

In vacating a default judgment against the defendant in a civil action, this
court directed that the defendant pay the plaintiffs' costs and attorney's
fees resulting from its appeal of the judgment, as well as any expenses
necessarily incurred by plaintiffs' counsel (and their expert witnesses,
if any) in refreshing their knowledge of the facts in the case after a
lengthy delay from the date last appointed for trial. [470-471]

CIVIL ACTION commenced in the Superior Court Department
on February 5, 1979.

A default judgment was ordered by *Eileen P. Griffin,* J.,
and a motion for relief from judgment was heard by her.

*Michael P. Duffy (Philip M. Cronin* with him) for the defendant.

*Cynthia J. Cohen (Michael B. Bogdanow* with her) for the
plaintiffs.

---

[1] Scannell's wife, Winifred E. Scannell.

CUTTER, J. This is an appeal by Ed. Ferreirinha & Irmao, Lda. (EFI), from a Superior Court order which denied EFI's motion to vacate a default and judgment allegedly "entered as a result of mistake, inadvertence, or excusable neglect." Subsequent proceedings took place in the manner hereinafter described. We direct that the judgment be vacated.

The action was commenced by Scannell on February 5, 1979, to recover from Bentley Industrial Corp. (Bentley) for personal injuries suffered by Scannell while he was working with an industrial drill manufactured by EFI, a Portuguese entity with its principal place of business in Porto, Portugal. EFI was not named as a defendant in the original complaint. In April, 1980, by an amended complaint, EFI was added as a defendant. It was defaulted[2] on September 25, 1980, for failure to answer.

In October, 1984, EFI apparently was served with an additional copy of an amended complaint, pursuant to the Hague Convention of November 15, 1965. In December, 1984, there was filed with the clerk's office of the Superior Court for Plymouth County, a document both in Portuguese and English, described in English as a "plea" and in Portuguese as a "Contestaçao," apparently intended to assert EFI's defenses to the complaint. The clerk of the courts on December 6, 1984, then removed the earlier default of EFI.

On May 6, 1985, the case was set for trial on June 5, 1985, by an order of a Superior Court judge; "no further continuances. 1st case out." There had been earlier continuances.

An affidavit (filed in support of EFI's later motion to vacate judgment) of Mr. Albano Rocha Teixeira, an employee of EFI "responsible for supervising the defense of this lawsuit on . . . [EFI's] behalf," discloses what had occurred theretofore and what took place thereafter, as seen from the standpoint of EFI.

(a) When EFI first learned of the litigation, it referred the matter to its product liability insurance company, The Northern

---

[2] No question appears to be raised as to the jurisdiction of the Massachusetts courts over EFI under the "long arm" statute, G. L. c. 223A, so we do not discuss that issue. A second amended complaint was filed by leave of court on June 25, 1981, which does not affect the present controversy significantly.

Assurance Co., Ltd. (Northern), and instructed it to assume the defense of the action.

(b) EFI conferred with attorneys for Northern "on numerous occasions." An attorney provided by Northern,[3] represented EFI's interests at a deposition in Portugal taken in behalf of the Scannells in May, 1984.

(c) EFI on May 14, 1985, received the notice (that the case was set for trial on June 5, 1985) and at once notified Northern. About May 22, 1985, Northern told EFI "that it would not take any further action in the defense of this case and would not provide an attorney to represent EFI at the trial." Then ensued various efforts by EFI to obtain Massachusetts counsel to represent EFI at trial.

An attorney from a Boston law firm (which EFI had attempted to retain to try the case at most only two or three days before June 5, 1985) attended the court session on June 6 (when trial was to begin) and sought a continuance in behalf of EFI. This was denied by a Superior Court judge and a default as to liability was entered on that day against EFI.[4]

The case then proceeded to trial. Because a settlement with the Scannells was under discussion, the other parties waived a jury trial. The settlement took place pursuant to a stipulation which preserved as against EFI the claims of the Scannells and also a cross claim of Bentley, the original principal defendant. The trial judge approved the settlement. Upon completion of the Scannells' ex parte proof on the issue of damages, the judge caused judgment by default to be entered on June 28, 1985, against EFI (a) for Scannell for $1,750,000, with interest

---

[3] The record does not disclose whether Northern does business in the United States. There is some suggestion in an affidavit of Mr. Leo V. Boyle, counsel for the Scannells, that a group of foreign insurance companies doing business in the United States (the foreign insurance group) provided counsel to attend depositions both in the United States and in Portugal to represent EFI's interests. There was also suggestion in argument that Northern "is an affiliate of " the foreign insurance group. What, if any, relationship exists cannot be ascertained on this record.

[4] The Boston law firm had notified EFI that it could not undertake to try the case on such short notice but that it would try to obtain a continuance. It entered no appearance for EFI.

from February 5, 1979, and costs, and (b) for Mrs. Scannell for $100,000, also with interest and costs.

During the thirty-day appeal period, no action was taken by or on behalf of EFI. On August 22, 1985, EFI, through its present counsel, filed a motion to vacate the default judgment pursuant to Mass.R.Civ.P. 55(c) and 60(b) (1); 365 Mass. 823, 828 (1974). This motion was denied on October 29, 1985, after hearing.[5]

All the numerous papers in the present record, so far as originating with or sent to EFI, give strong support to the view that EFI until May 22, 1985 (when Northern notified EFI that it would not defend it in this law suit) had relied on Northern to provide for its defense. After May 22, 1985, EFI made substantial (but unsuccessful) "efforts to secure . . . counsel." There is no significant suggestion that EFI itself was not in fact surprised by Northern's conduct, which is not explained on this record. Counsel for the Scannells appears conscientiously to have seen that Massachusetts counsel for the supposed affiliate of Northern was kept informed of developments in the case. There is, however, indication in the relevant correspondence that EFI and its management were seriously misled and confused because of language problems, difficulties in international communication, lack of Massachusetts contacts, and lack of familiarity with legal procedures in the United States. We are of opinion that the trial judge seriously underestimated these difficulties.

1. This case is governed by the principles discussed in *Berube* v. *McKesson Wine & Spirits Co.,* 7 Mass. App. Ct. 426, 429 (1979). Although it was recognized (at 429) that a motion under rule 60(b) is addressed to the sound discretion of the trial court, it was also stated (at 430) that "whether relief should be granted for excusable neglect is a question which requires *a case by case assessment* of the circumstances" (emphasis supplied). The *Berube* case then proceeds to set out (at 430-431)

_____

[5] The motion to vacate was heard on the affidavits of Mr. Boyle and Mr. Teixeira. The facts (as distinguished from the contentions) set out in the latter's affidavit were not controverted significantly in the statements of counsel made during the hearing on the motion.

six relevant factors appropriately to be taken into account in passing on a motion under rule 60(b). The pertinent authorities are collected in the *Berube* case and need not be repeated here.

2. In the *Berube* case (at 435), it was noted that there was no abuse of discretion in the action of the trial judge in granting the motion to vacate judgment although this court "would also have found no abuse of discretion if the judge had refused to allow the motion." In *Wilkinson* v. *Guarino,* 19 Mass. App. Ct. 1021, 1023 (1985), however, the severity of the imposed sanction of dismissal was a ground for this court's reversing (for abuse of discretion) the denial of a motion to vacate under rule 60(b). See also *Mullen Lumber Co.* v. *F.P. Associates,* 11 Mass. App. Ct. 1018, 1019 (1981).[6]

3. We conclude that, in the circumstances under review, the trial judge's aggregate action (a) in ordering a default judgment, instead of affording EFI sufficient time to obtain new counsel and to prepare its case, and (b) her subsequent denial of the motion under rule 60(b), amounted to an abuse of discretion because an erroneous application of the *Berube* factors[7] found

---

[6] See as bearing upon the standards to be applied in an issue like the present one, Restatement (Second) of Judgments §§ 77-78 (1982 & Supp. 1985); 11 Wright & Miller, Federal Practice and Procedure §§ 2857 (1973 & Supp. 1986); Smith & Zobel, Rules Practice §§ 60.1-60.7 (1977 & Supp. 1986). See also *Jabaily* v. *Cullen,* 18 Mass. App. Ct. 943, 944-945 (1984).

[7] Treating these factors in the same order in which the factors are mentioned in the *Berube* case, EFI's contentions appear to us to meet them: (1) EFI acted promptly after the entry of the default judgment to vacate it; (2) EFI by affidavit has stated contentions which, if proved, will show a "meritorious" case although, of course, that does not mean that this standard requires "a showing of certainty of success" (see 7 Mass. App. Ct. at 433); (3) EFI's reliance on its insurer occurred before rather than after trial and the failure to defend was apparently caused by the insurer's inaction rather than misconduct by EFI; (4) there was no "consciously chosen course of conduct" on EFI's part; (5) any prejudice to the Scannells is minimal because they never had to try their case against EFI and have already made a settlement (without EFI's participation) with Bentley and all other defendants by a present payment of $300,000 and aggregate future payments of at least $1,410,000) and any additional expense to the Scannells can be met by imposing terms in granting relief to EFI; (6) any error appears to be chargeable to Northern and not to EFI itself; and we share the reluctance of "courts . . . to attribute to the parties the errors of their legal [or other] representa-

in 7 Mass. App. Ct. at 430-431. This was not a case where the "orderly management of the trial list" deserved "determinative consideration." Compare *Beninati* v. *Beninati,* 18 Mass. App. Ct. 529, 535 (1984). The severity of the consequences to EFI made a default judgment altogether too great a sanction.

4. In addition to the six *Berube* factors (see n. 7), we give weight to the strong judicial preference for seeing serious and substantial cases dealt with on the merits with representation of all parties by counsel, rather than by default. See the discussion in 11 Wright & Miller, Federal Practice and Procedure § 2857, at 157-161 (1973 & Supp. 1986). The present situation seems to us to be affected greatly by the circumstance that EFI, the defaulted party, was a foreign corporation with probably limited activity in the United States and with obvious lack of familiarity with Massachusetts court procedures, even if it did have enough business sophistication to take out insurance. The large amount of the default judgment is a circumstance which shows that EFI well may have suffered from its insurer's conduct.

5. The Scannells obviously have been caused additional expense by the necessity of dealing with this appeal. They are to have costs of this appeal, including counsel fees to be assessed in the Superior Court at reasonable hourly rates for time appropriately spent in necessary research, brief preparation, and oral argument. They and Bentley are to receive reasonable amounts, also to be fixed in the Superior Court, for expenses necessarily incurred by counsel (and their expert witnesses if any) in refreshing their knowledge of the facts of a case which they expected to try in June, 1985, but now will probably try about two years later. The costs of the present appeal (including counsel fees) as so fixed shall be paid forthwith in United States funds. The other expenses fixed in the Superior Court

tives." See, e.g., *Barber* v. *Tuberville,* 218 F.2d 34, 36 (D.C. Cir. 1954). We note that the Supreme Judicial Court, 398 Mass. 1107 (1986), ordered further appellate review of an unpublished memorandum and order of this court, *Monahan* v. *Washburn, post* 1103 (1986), which dealt with the matter of continuances.

in accordance with this paragraph, if not promptly paid in such funds, shall be secured by a surety company bond in the amount so fixed. We deny the request of counsel for the Scannells that EFI be required to furnish a bond to secure any recovery by the Scannells after trial. See the discussion in *Burger Chef Syss., Inc.* v. *Servfast of Brockton, Inc.*, 393 Mass. 287, 289-292 (1984).

6. All provisions of this opinion are, of course, to be without prejudice to any remedies or causes of action which EFI may have against Northern. In view of the disposition now ordered, we need not discuss EFI's contention that any recovery against EFI must be limited to the original ad damnum.

7. The default on liability entered June 6, 1985, and the judgment entered June 28, 1985, severally are to be vacated. The cases of the Scannells and Bentley against EFI are to stand for trial at such date, not earlier than ninety days after the receipt of the rescript in this case in the clerk's office of the Superior Court, as may be determined in the Superior Court (without prejudice to the settlements heretofore reached). Sanctions as provided in paragraph 5 of this opinion are to be imposed in the Superior Court.

*So ordered.*