JOHN D. SCANNELL & another[1] vs. ED. FERREIRINHA
& IRMAO, LDA.

Plymouth. September 9, 1987. — November 16, 1987.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & LYNCH, JJ.

*Practice, Civil,* Default, Relief from judgment, Judicial discretion, Failure
to raise issue, Damages. *Judgment,* Default, Relief from judgment.
*Damages,* Tort. *Joint Tortfeasors.*

Where ample evidence in the record of a civil action indicated that the
defendant, a Portuguese corporate entity which had been defaulted twice
during the litigation, was careless in failing to defend in proceedings
that had been prolonged for over six years, and that the corporation's
neglect was inexcusable, the judge did not abuse her discretion in denying
the corporation's motion to vacate the second default judgment against
it. [157-161]

This court considered the contention of the defendant in a civil action that
the judge erred in entering judgment in an amount greater than that
stated by the plaintiff in his demand for judgment, in contravention of
Mass. R. Civ. P. 54 (c), even though the defendant had failed to raise
the issue either on a direct appeal from the judgment or in conjunction
with its motion to vacate below. [161-163]

A judge erred in entering a default judgment against the defendant in a civil
action for an amount greater than the $800,000 stated by the plaintiff
in his demand for judgment under Mass. R. Civ. P. 54 (c). [163-164]

In determining the amount of a plaintiff's judgment against a defaulting
defendant in a personal injury action, the amount of a settlement reached
between the plaintiff and two joint tortfeasors was to be deducted, pur-
suant to G. L. c. 231B, § 4 (*a*), from the total amount of damages
actually found by the judge, rather than from the lesser amount of the
plaintiff's ad damnum, to which his recovery was limited by Mass. R.
Civ. P. 54 (c). [165]

CIVIL ACTION commenced in the Superior Court Department
on February 5, 1979.

---

[1] Winnifred E. Scannell.

A default judgment was ordered by *Eileen P. Griffin*, J., and a motion for relief from judgment was heard by her.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Michael P. Duffy* (*Philip M. Cronin* with him) for the defendant.

*Cynthia J. Cohen* (*Leo V. Boyle & Michael B. Bogdanow* with her) for the plaintiffs.

LYNCH, J. On November 7, 1976, the plaintiff, John D. Scannell, was injured while operating a drill press manufactured by Ed. Ferreirinha & Irmao, Lda., (EFI), a Portuguese corporation. Scannell asserted claims for injuries arising from the accident against EFI, the retailer of the drill press, and his employer. His wife claimed loss of consortium.

On April 15, 1980, the plaintiffs' amended complaint was served on EFI in Portugal, pursuant to G. L. c. 223A (1986 ed.), by registered mail. EFI signed and returned the receipt and also sent the plaintiffs' counsel a letter acknowledging receipt of the summons, and stating that the matter had been turned over to EFI's insurance company, Northern Insurance Company (Northern). According to the affidavit of an employee, one Albano Rocha Teixeira, EFI believed at this point that Northern would defend its interests at trial.[2]

Through September 11, 1980, neither EFI nor its insurer had filed any responsive pleading in the action and the defendant was defaulted. A copy of the default judgment was sent to EFI and receipt was acknowledged by letter to the plaintiffs' counsel. Beyond this letter, EFI took no action for over four years to cure the default.

During pretrial discovery an attorney ostensibly representing the Commercial Union Assurance Companies, an affiliate of Northern, attended depositions of three of Scannell's fellow

---

[2] Teixeira states that EFI communicated with Northern concerning this case on "numerous occasions." However, EFI offers no evidence of these communications beyond Teixeira's statement.

employees. In May, 1984, an attorney for Northern and an attorney retained by EFI attended a deposition in Portugal.[3]

In October, 1984, the plaintiffs again served process on EFI, this time in accordance with the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, November 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638. After an answer was filed by EFI's attorney, the plaintiffs moved to remove the default against EFI, and to schedule the case for trial on June 5, 1985, with "no further continuances." The motion was allowed.

The plaintiffs' counsel notified EFI and its attorney of the trial date. Both EFI and the attorney acknowledged the letter and stated that arrangements were being made for an attorney in the United States to defend the case.

When the case was called for trial on June 6, 1985, an attorney requested a continuance on behalf of EFI, but did not file an appearance. The request for continuance was denied and EFI was defaulted. The trial went forward and a settlement was reached with the other two defendants in the amount of $550,000, and was approved by the judge. A hearing was then held on the assessment of damages against EFI.

On June 28, 1985, damages were assessed against EFI in the amount of $1,750,000, in favor of John Scannell and $100,000 in favor of Mrs. Scannell, less a credit for the $550,000 settlement. Mr. Scannell had only requested damages of $800,000 in his demand for judgment. EFI did not appeal from this judgment. On August 22, 1985, EFI moved to vacate the judgment under Mass. R. Civ. P. 60 (b) (1), 365 Mass. 828 (1974). The motion was denied. EFI appealed to the Appeals Court, which reversed. 23 Mass. App. Ct. 465 (1987). We granted the plaintiffs' application for further appellate review. We remand the case to the Superior Court with instructions.

1. *Motion to vacate.* A motion to vacate judgment under rule 60 (b) (1), is properly addressed to the sound discretion

[3] EFI asserts that the presence of the Northern attorney confirmed its belief that Northern would defend it at trial, but again offers no evidence to justify this belief.

of the trial judge.[4] *Bird* v. *Ross,* 393 Mass. 789, 791 (1985). *Trustees of the Stigmatine Fathers, Inc.* v. *Secretary of Admin. & Fin.,* 369 Mass. 562, 565 (1976). The trial judge is in the best position to balance the competing claims of fairness to the litigants and case-flow efficiency presented by such a motion. *Berube* v. *McKesson Wine & Spirits Co.,* 7 Mass. App. Ct. 426, 434 (1979). Cf. *Burger Chef Syss., Inc.* v. *Servfast of Brockton, Inc.,* 393 Mass. 287, 289 (1984). Therefore, while appellate courts have not hesitated to intercede when the circumstances so required, see, e.g., *Wilkinson* v. *Guarino,* 19 Mass. App. Ct. 1021, 1023 (1985); *Mullen Lumber Co.* v. *F.P. Assocs.,* 11 Mass. App. Ct. 1018 (1981), a judge's decision will not be overturned, except upon a showing of a clear abuse of discretion. *Bird* v. *Ross, supra. Murphy* v. *Administrator of the Div. of Personnel Admin.,* 377 Mass. 217, 227 (1979). See *Cullen Enters., Inc.* v. *Massachusetts Property Ins. Underwriting Ass'n,* 399 Mass. 886, 894 (1987); *Chiu-Kun Woo* v. *Moy,* 17 Mass. App. Ct. 949 (1983). In this case, the defendant fails to make such a showing.

According to EFI, the motion to vacate should have been granted because the company's ill-fated reliance on its insurer to defend the case constituted "excusable neglect" within the meaning of rule 60 (b). However, in order to prevail, EFI bears the burden of proving that the mistake or neglect "was not due to [its] own carelessness." *Murphy* v. *Administrator of the Div. of Personnel Admin., supra* at 228, quoting Reporters' Notes, J.W. Smith & H.B. Zobel, Rules Practice 462 (1977). We conclude that it was not error for the judge to find that EFI had not carried this burden.

In making this determination, we accept as true the uncontroverted portions of EFI's affidavit. *Farley* v. *Sprague,* 374 Mass. 419, 424-425 (1978). Nonetheless, there was ample evidence from which the judge could have found that EFI was

---

[4] "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect . . . ." Mass. R. Civ. P. 60 (b), 365 Mass. 828 (1974).

careless. EFI was defaulted twice in this case. It is from the second default that EFI seeks to escape by this appeal. The first default was entered in September, 1980, and idled on the docket for over four years. Prior to the default, EFI claims that it had informed its insurer, Northern, of the lawsuit and that it communicated with Northern's attorneys on "numerous occasions" prior to the default. Yet there is no evidence that EFI did anything during those four years to cure the default either by its own actions or by persuading Northern to act expeditiously on its behalf.

Furthermore, while EFI's affidavit declares that the presence of a Northern attorney at a deposition of the company "confirmed our belief that Northern Assurance would defend EFI at trial," nowhere does EFI state that it actually received such confirmation from Northern or from Northern's attorney. Although EFI states in its affidavit that it was not informed of Northern's unwillingness to defend until May 22, 1985, one week earlier, on May 14, 1985, EFI's attorney wrote to the plaintiffs' counsel and acknowledged that he had "already made arrangement for getting a lawyer who will be present in Court and defend my Client." While the letter was not without ambiguity, the judge may have inferred from it that EFI was not in fact relying on its insurer to defend it, and therefore that it was the company's own carelessness in this regard that led to the default. Alternatively, the judge may have simply believed that EFI's reliance on the insurer, to whatever extent, was unreasonable in light of all the facts. In either case, there was ample evidence from which the judge could conclude that the neglect in this case was indeed inexcusable and, therefore, the denial of the motion to vacate was within the judge's discretion.

The defendant asserts that this case satisfies all of the factors established in *Berube* v. *McKesson Wine & Spirits Co.*, *supra* at 430-431, governing the granting of relief from judgment, and the Appeals Court agreed. This argument misapprehends the discretionary nature of the rule 60 (b) decision. As we have said, "Facts similar to those which the Appeals Court found *justified* the action of the motion judge in *Berube* do not compel a ruling that the judge *abused* his discretion in this

case" (emphasis in original). *Bird* v. *Ross,* 393 Mass. 789, 791 (1985). "There is no error of law amounting to an abuse of discretion simply because a reviewing court might have reached a different result; the standard of review is not substituted judgment." *Bucchiere* v. *New England Tel. & Tel. Co.,* 396 Mass. 639, 641 (1986). For purposes of this appeal, it is sufficient that the judge could have found for the plaintiffs within the bounds of her discretion; beyond that appellate inquiry is at an end.

Nonetheless, EFI argues that, even if it was guilty of some neglect, the judge abused her discretion by imposing on EFI an excessively severe sanction, citing *Henshaw* v. *Travelers Ins. Co.,* 377 Mass. 910, 911 (1979); *Wilkinson* v. *Guarino, supra* at 1023; *Ticchi* v. *Ambassador Cab, Inc.,* 11 Mass. App. Ct. 912 (1981); *Mullen Lumber Co.* v. *F.P. Assocs., supra* at 1019. However, these cases are inapposite to the present situation.

Here, the judge was dealing not with an easily remedied failure to comply with a discovery request as in *Henshaw* or a failure to answer interrogatories as in *Ticchi,* but rather with a failure to provide an adequate defense in a case that had already dragged on for over six years. In the circumstances, entry of a default judgment against the defendant was not so much a punitive sanction as it was the logical and fair resolution of a case where a party had failed properly to protect its interests.

The defendant's claim of support from *Wilkinson* and *Mullen Lumber Co.* is equally unfounded. In those cases, the aggrieved parties were relatively unsophisticated individuals, while the defendant here is a business enterprise engaged in international commerce. It is thus fair to expect more of the defendant in the way of safeguarding its interests. Furthermore, the parties in *Wilkinson* and *Mullen Lumber Co.* acted promptly to cure the defaults against them; EFI allowed the first default to stand against it for over four years and after the removal of that default was still unprepared for trial and unrepresented six months later. Moreover, the neglect in *Wilkinson* and *Mullen Lumber Co.* was caused by the parties' respective attorneys,

while here the finding was warranted that the neglect was that of the defendant itself. Finally, the likelihood of prejudice to the adverse party is much greater in this case, where the default for failure to appear on the assigned trial date was more than six years from the date of the original complaint. The delays in *Wilkinson* and *Mullen Lumber Co.* were a matter of a few months. Therefore, we find the defendant's analogy to *Wilkinson* and *Mullen Lumber Co.* unconvincing.

A better comparison is *Taylor* v. *Boston & Taunton Transp. Co.,* 720 F.2d 731 (1st Cir. 1983). In upholding the Federal District Court's denial of a motion to remove a default, the court said: "The reasonable course of action for [the defendant] to have followed would have been to make some further inquiry . . . to ascertain the true status of the case. Instead . . . [the defendant] did nothing until after receiving a copy of the final judgment some 16 months later. On these facts the district court could reasonably find that the default was not excusable." *Id.* at 732-733. In the circumstances, we cannot say that the judge abused her discretion in not finding such neglect to be excusable.[5]

2. *Rule 54 (c).* However, EFI contends that, even if the judge did not abuse her discretion in denying the motion to vacate, she erroneously entered a judgment for an amount greater than that requested by Mr. Scannell in his demand for judgment,[6] in contravention of Mass. R. Civ. P. 54 (c), 365 Mass. 820 (1974).[7] The plaintiffs respond that EFI is precluded

---

[5] In their brief, the plaintiffs urge us to decide here the issue of an innocent insured's rights as against its insurer where the insurer neglectfully fails to defend under the rule of "imputed neglect" in effect in some jurisdictions. See, e.g., *Stevens* v. *Gulf Oil Corp.,* 108 R.I. 209 (1971); *Milks* v. *Clark's Greensboro, Inc.,* 260 N.C. 676 (1963); Annot., 87 A.L.R.2d 870 (1963). We do not reach the issue of "imputed neglect" on this appeal.

[6] As noted earlier, Mrs. Scannell was awarded $100,000 on her loss of consortium claim. This was the amount requested in her demand for judgment. But Mr. Scannell was awarded $1,750,000, while his demand for judgment amounted to only $800,000. Therefore, EFI's claim of error under rule 54 (c) applies only to the award of damages in favor of Mr. Scannell.

[7] Rule 54 (c) of the Massachusetts Rules of Civil Procedure states in pertinent part: "A judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment."

from raising that issue here, because EFI failed to assert it either on a direct appeal from the judgment or in conjunction with the motion to vacate below. *Trustees of the Stigmatine Fathers, Inc.* v. *Secretary of Admin. & Fin.*, 369 Mass. 562, 565 (1976). *Milton v. Civil Serv. Comm'n*, 365 Mass. 368, 379 (1974). See *Nolan* v. *Weiner*, 4 Mass. App. Ct. 800 (1976) (appeal from denial of motion for relief from judgment presents no issue of propriety of underlying judgment). EFI attempts to avoid this problem by claiming that rule 54 (c) imposes a limit on the subject matter jurisdiction of the trial judge and, therefore, a judgment violating the rule may be attacked at any time. See *Nature Church* v. *Assessors of Belchertown,* 384 Mass. 811, 812 (1981); *Litton Business Syss., Inc.* v. *Commissioner of Revenue,* 383 Mass. 619, 622 (1981).

The question whether rule 54 (c) goes to the jurisdiction of the court or merely states a procedural constraint does not admit of simple solution. Authoritative commentators caution us to distinguish carefully between jurisdictional defects and "mere error" in a judgment. Restatement (Second) of Judgments § 11 comment e (1982). However, the Restatement acknowledges that the problem of distinguishing procedural error from jurisdictional defect "can be particularly difficult . . . when a procedural provision governing the proceedings is arguably classifiable as a 'jurisdictional' requirement that must be observed if the proceeding is to have effect . . . . [In such] situations, the matter in question can plausibly be characterized either as going to subject-matter jurisdiction or as being one of merits or procedure." *Id.* at 112-113. The solution, according to the Restatement comes not "through refinement of terminology, but through the cumulation of categorizing decisions into a pattern." *Id.* at 113.

Unfortunately, in this case the "pattern" sketched by the decisions is far from uniform. Rather, there are two directly divergent lines of authority. The first line of cases states that, to the extent that a default judgment orders relief in excess of the demand it is void and beyond the jurisdiction of the ordering court. See *National Diversified Servs., Inc.* v. *Bernstein,* 168 Cal. App. 3d 410 (1985); *Columbia Valley Credit Exch., Inc.*

v. *Lampson,* 12 Wash. App. 952 (1975). See also *Sache* v. *Gillette,* 101 Minn. 169 (1907). 3 A.C. Freeman, Judgments § 1297, at 1692 (5th ed. 1925). These cases seem to represent the modern trend, if there can be said to be a trend at all. However, several older cases, comprising the second line of authority, label the court's action a mere procedural irregularity which, if not objected to below, is generally deemed waived on appeal. See *Ketchum* v. *White,* 72 Iowa 193 (1887); *Harrison* v. *Union Trust Co.,* 144 N.Y. 326 (1895); *Mach* v. *Blanchard,* 15 S.D. 432 (1902). Cf. *In re Graham,* 74 Wis. 450 (1889), aff'd, 138 U.S. 461 (1891). In order to decide this case, we need not engage in the somewhat artificial process of labeling rule 54 (c) as either "procedural" or "jurisdictional." Appellate courts have discretion to consider issues not argued below where injustice might otherwise result. *McLeod's Case,* 389 Mass. 431, 434 (1983). In this case, we exercise that discretion.

Rule 54 (c) enables a defendant to make a rational decision whether to defend an action. Since the rule limits the amount of relief a plaintiff can recover upon a default, it permits the defendant to weigh the ascertainable cost of losing by default versus the probable costs of going to trial, and then to choose the less expensive option. See J.W. Smith & H.B. Zobel, Rules Practice § 54.9, at 312 (1977), and cases cited. A defaulted defendant thus retains a palpable reliance interest in rule 54 (c)'s assurance that his liability on default will in no event exceed the amount of the plaintiff's demand. This justifiable reliance is unjustifiably ignored when a judge awards more damages than rule 54 (c) had given the defendant cause to expect. Furthermore, granting relief in excess of the demand disregards the fact that a defaulted defendant has not litigated any issues before the court. In such circumstances, fairness dictates that the judge confine his award to the amount demanded in the pleadings. See *Sylvan Beach, Inc.* v. *Koch,* 140 F.2d 852, 861-862 (8th Cir. 1944); J.W. Smith & H.B. Zobel, Rules Practice, *supra* at 311 n.65.

Finally, the party in the best position to protect against an inadequate damage award is the plaintiff himself. A plaintiff

knows better than anyone the nature and extent of his injury. He is expected to request damages sufficient to compensate for that injury. If new information arises, or the plaintiff finds that his original request was somehow inaccurate, he is free to amend his complaint upon a showing that "justice so requires." Mass. R. Civ. P. 15 (a), 365 Mass. 761 (1974). Thus, in the typical case, the plaintiff's burden of avoiding an inadequate award is light, while the defendant's burden of an excessive award may be catastrophic. In fairness, therefore, the consequences of an erroneous award in excess of the demand ought to be borne by the plaintiff alone.[8] Therefore, we conclude that the award of damages on Mr. Scannell's claim should be reduced to $800,000, plus interest and costs, the amount of the demand stated in the amended complaint.[9]

---

[8] See *Jabaily* v. *Cullen,* 18 Mass. App. Ct. 943 (1984). There, a default judgment in the amount of $550,651, plus interest, was entered against the defendant who moved to vacate the judgment. That motion was denied, but the judge did grant the defendant's motion for relief from the judgment by reducing the award of damages to $100,000, the amount stated in the demand. On appeal, the defendant claimed that it was error for the judge to decline to vacate the judgment in its entirety. The Appeals Court upheld the judge's decision, stating that the original damage award "was not void in its entirety . . . but was susceptible of correction in the manner ordered by the judge." *Id.* at 945. The Appeals Court did not have before it the issue whether rule 54 (c) is a jurisdictional limitation; nonetheless, it determined that the plaintiff should bear the burden of an inadequate request for relief.

[9] Subsequent to the entry of the judgment in this case, the General Court enacted G. L. c. 231, § 13B (1986 ed.), effective July 1, 1987, which states: "No complaint in any civil action shall contain an ad damnum or monetary amount claimed against any defendant, unless such ad damnum or monetary amount claimed indicates damages which are liquidated or ascertainable by calculation and a statement under oath by a person having knowledge thereof is attached to such complaint setting forth the manner in which the amount of said damages was calculated." The new law makes no reference to Mass. R. Civ. P. 54 (c). Accordingly, the District Municipal Courts Rules of Civil Procedure have been amended by rule 102A (effective July 1, 1987), which provides: "STATEMENT OF DAMAGES. In all civil actions governed by the District/Municipal Courts Rules of Civil Procedure, a party seeking relief in the form of money damages in a complaint, cross-claim, or counterclaim shall state the amount of said money damages claimed on the form prescribed therefor by the Administrative Justice of the District Court Department or the Administrative Justice of the Boston Municipal

3. *G. L. C. 231B, § 4.* No further reduction is afforded by G. L. c. 231B, § 4 (*a*) (1986 ed.), which provides that amounts received in settlement from a joint tortfeasor "shall reduce the claim against the others to the extent" of the value of the settlement amount received. The present value of the plaintiffs' settlement with the other defendants is $550,000. EFI contends that the "claim" from which this settlement amount should be subtracted is Mr. Scannell's ad damnum of $800,000. The plaintiffs, on the other hand, contend that the word "claim" as used in § 4 means not merely the amount of damages *requested* but the amount of damages as *actually found* by the trial judge and, therefore, that the damage award should not be reduced below $800,000. We agree with the plaintiffs for the reasons set out below.

The defendant cites no decision applying the interpretation it favors. But see *Grace* v. *Buckley,* 13 Mass. App. Ct. 1081, 1082 (1982) (consideration for release to be "subtracted from the total of the damages found to have been suffered"). Furthermore, in defining "claim for relief," Mass. R. Civ. P. 8 (a), 365 Mass. 749 (1974), explicitly distinguishes between the "claim" and the "demand for judgment." The result we reach is in accord with sound policy as well. One of the policy goals of § 4 is to ensure that a plaintiff suing multiple tortfeasors does not "receive remuneration in excess of his actual damages." *Tritsch* v. *Boston Edison Co.,* 363 Mass. 179, 182 (1973). If "claim" were defined to mean the demand for judgment, rather than the amount of a plaintiff's damages, the plaintiff would receive a windfall when the amount of his damages is determined to be less than the ad damnum. We see no reason in this case, simply because the judge awarded damages *greater* than the ad damnum amount, to apply such an artificial definition of the word "claim."

Court Department, as the case may be. No clerk-magistrate shall accept for filing any complaint, crossclaim, or counterclaim unless it is accompanied by such a form. A copy of the form, including the statement as to damages, shall be served on all other parties together with the complaint, crossclaim, or counterclaim."

We therefore remand the case to the Superior Court and order the entry of a judgment for the plaintiff, John Scannell, in the amount of $800,000, plus interest and costs.

*So ordered.*