van Gestel, J.
This matter is before the Court on a pleading entitled “Motion of the Plaintiff Corporate Teledata Pursuant to Mass.R.Civ.P. 60(b) for Relief from Order of Dismissal in Favor of Certain Defendants.” The motion is vigorously opposed by the affected defendants.

BACKGROUND

What is involved is this Court’s granting of the ultimate sanction of dismissal for discoveiy abuse pursuant to Mass.R-Civ.P. Rule 37(d). The pertinent procedural histoiy is set forth in this Court’s Memorandum and Order of November 15,2002 (the “November 15 Memorandum”) [15 Mass. L. Rptr. 457], with which full familiarity is presumed.
The November 15 Memorandum reveals, among other things, this Court’s three consecutive orders mandating compliance by the plaintiff with the defendants’ long-outstanding requests for production of documents and supplementation of interrogatoiy answers. Those three orders are dated: August 21, 2002; September 20, 2002; and October 3, 2002. On each occasion the Court warned the plaintiff that a failure to comply would result in dismissal under Rule 37.
The November 15 Memorandum reveals also that on October 18, 2002, the Court received a fourth motion by the defendants seeking relief and complaining of the same discoveiy failures. The Court held this motion for two weeks, until October 30, 2002, to give the plaintiff time to respond. No response — whether in writing, by facsimile or by telephone — came from either of the two attorneys representing the plaintiff. Consequently, this Court granted the defendants’ motion and dismissed the claims against the moving parties.
The November 15 Memorandum reveals still further that it was in response to two motions by the plaintiff, each seeking relief from the order of dismissal. Thus, what is now characterized as a Rule 60(b) motion for relief from an order of dismissal is in actuality a motion for reconsideration of this Court’s actions reconsidering — on November 15, 2002 — its prior order of dismissal on October 30, 2002.

DISCUSSION

The Reporters’ Notes to Rule 60(b) suggest that it only applies to final judgments, of which there is none here. “Interlocutoiy judgments thus do not fall within Rule 60(b).” Respectfully, this Court believes this may be too narrow a reading of the Rule. The words of the Rule speak to relief from a “final judgment, order, or proceeding ...” Whether the word “final” is meant to modify “order, or proceeding” is not clearly evident.
In any event, this Court, in exercising the discretion vested in it under the circumstance presented, should not be faulted for considering, at least to some extent, the case law that suggests the kind of approach to be taken in a Rule 60(b)(1) situation and applying it here.
“Excusable neglect” is the hook upon which the plaintiff seeks to hang its argument. In assessing the situation, the Court recognizes full well the reluctance shown by judges to deprive parties of a fair chance to litigate, even in those cases when the neglect is that of an attorney. However, “[t]he most severe in the spectrum of sanctions . . ., must be available to the . . . court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent.” National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 643 (1976). Courts, having little access to discovery produced, and none whatsoever to what may exist but not be produced, are at the total mercy of counsel. Courts must, therefore, hold counsel to a high standard of good faith in responding to discovery motions when their activities are challenged by counsel on the other side of the issue.
*766 Here, of course, the neglect is that of not one, hut two, attorneys; and the chief executive officer of the plaintiff does not seem herself to be wholly out of the loop of knowledge about the discoveiy issues involved. [1]
The Reporters’ Notes to Rule 60(b) have the following to say:
The “excusable neglect” clause of the section has been frequently interpreted. It seems clear that relief will be granted only if the party seeking relief demonstrates that the mistake, misunderstanding, or neglect was excusable and was not due to his own carelessness. See Petition of Pui Lan Yee, 20 F.R.D. 399 (N.D.Cal. 1957); Kahle v. Amtorg Trading Corp., 13 F.R.D. 107 (D.N.J. 1952). The party seeking relief bears the burden of justifying failure to avoid the mistake or inadvertence. The reasons must be substantial. For example, the misplacing of papers in the excitement of moving an attorney’s office was held not to constitute excusable neglect sufficient to relieve a party from a default judgment entered for failure to file an answer. Standard Newspaper, Inc. v. King, 375 F.2d 117 (2nd Cir. 1967). Likewise, ignorance of the rules of civil procedure has been held not to be “excusable neglect.” Ohlinger v. U.S., 308 F.2d 667 (2nd Cir. 1962).
The arguments of Messrs. Lynch and Poirier hardly present “substantial” excuses. Their actions — and inactions — reflect little more than carelessness and bumbling mismanagement of their duties toward their client, not a deliberate choice of a particular course of conduct. Their excuses already previously have been rejected.
The Court must balance “the competing claims of fairness to [all] the litigants and case-flow efficiency.” Scannell v. Ed. Ferreirinha & Irmao, LDA., 401 Mass. 155, 158 (1987). This case was filed on February 28, 2001. The complaint took a shotgun approach, suing 15 different defendants.
The case was filed and accepted into the Suffolk Business Litigation Session (“BLS”). The BLS is a special session of the Superior Court designed to handle an array of complex business litigation cases. The two judges in the session have been taken off the regular Superior Court circuit so that they may stay permanently in one courthouse and handle their cases from beginning to end. The scheduling of firm trial dates, well in advance, is a particularly important aspect of managing complex cases.
Pursuant to its regular procedures in the BLS, this Court held a Rule 16 status conference in August of 2001. It thereafter established a discoveiy schedule and trial date consistent with the parties’ expressed desires and the Court’s calendar. Discoveiy originally was to be concluded by March 29, 2002, and, after dispositive motion practice, trial was set for July 22, 2002.
On the joint request of the parties, the special tracking order was extended, such that the new trial date now is March 24, 2003. The parties actually sought an October 2002 trial, but the Court’s calendar could not accommodate that request.
Throughout, there has been a great deal of motion practice, much of which related to discoveiy issues. To date, over 138 separate pleadings and orders have been docketed. Also, the Court has heard and acted upon more than one dispositive motion. Thus, the Court has a relatively good grasp of the situation. This does not appear to be a particularly strong case against any of the dismissed defendants. It may have some legs against the only remaining individual defendant, Thomas J. Sullivan, but he may be near to judgment proof.
The defendants advise that if the plaintiff does finally provide all of the discoveiy that has been long sought, it will then be necessaiy for them to take several more depositions and to finish the deposition of the plaintiffs chief executive, which deposition was interrupted when the document production failures first arose. This further discoveiy will require a new trial date. But for openings that may occur by reason of settlements or actions on dispositive motions, this Court’s calendar will not permit a new trial date for this case until October of 2004.
The Court also considered the possibility of taking no action on the present motion and awaiting the March 24,2003 trial against the sole remaining defendant. Certainly, if the plaintiffs claim against that defendant fails, there can be little or no merit to the claims against the dismissed defendants. This, however, does not seem a prudent or efficient way to conduct this litigation. The “dismissed” defendants ought not be placed in the position of having to participate in the upcoming trial or to run the risk that the remaining defendant — who is acting pro se — will commit some error binding on them.
This whole dilemma is of the plaintiffs own making. It engaged the attorneys, and its attorneys caused the failures in issue. A Court’s orders — here, there were three — must have some meaning and must be complied with or, at minimum, responded to, so that the issuing Court can assess the situation. That did not happen here.

ORDER

For the foregoing reasons, the plaintiffs motion for relief pursuant to Rule 60(b) is DENIED.

In her affidavit supporting the present motion, JoAnn Wallace describes herself as the person who “presently [is] and . . . [has] been” the person primarily responsible for all aspects of the plaintiffs daily operations and having the most knowledge of the company. She concedes her understanding that the plaintiff “was obligated to produce all documents that could be connected in any way to the various claims pending among the parties.” Affid. para. 3. Ms. Wallace also claims to “have treated the Court’s discovery orders with deference and respect.” Affid. para. 2. Indeed, Ms. Wallace claims full compliance with the discovery orders.