NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

22-P-1185                                        Appeals Court

 FORT POINT INVESTMENTS, LLC  vs.  HOPE KIRUNGE-SMITH & another.[1]


No. 22-P-1185.

Middlesex.     October 13, 2023. – March 4, 2024.

Present:  Wolohojian, Desmond, & Sacks, JJ.


Summary Process, Appeal.  Landlord and Tenant, Eviction.
    Judgment, Relief from judgment, Enforcement.  Practice,
    Civil, Summary process, Relief from judgment, Execution.



    Summary Process.  Complaint filed in the Eastern Division
of the Housing Court Department on March 29, 2021.

    A motion to vacate a default judgment was heard by Michael
E. Malamut, J., and the reissuance of an execution for
possession was ordered by him.


    Alexander H. Loomis for the defendants.
    Eleftherios S. Papadopoulos for the plaintiff.
    Mark Martinez, for Massachusetts Law Reform Institute,
amicus curiae, submitted a brief.
    Joel Feldman, for Heisler & Feldman, P.C., amicus curiae,
submitted a brief.


--------

    [1] Avery Goldman.

SACKS, J.  The defendants in this procedurally tangled summary process case appeal from a Housing Court judge's order (1) denying their motion for relief from the default judgment entered against them and (2) declining to recall a second execution for possession that was issued after the landlord returned the first execution unused.  We affirm the portion of the order denying the motion for relief from judgment.  We conclude, however, that reissuance of the execution was barred by G. L. c. 235, § 23, second par., which provides generally that an execution for possession in a summary process action shall not be issued later than three months after judgment.  The execution must therefore be recalled.[2]

Background.  The defendants (tenants) rented an apartment in Cambridge from the plaintiff (landlord).  In March 2021, the landlord, asserting non-payment of rent, commenced this summary process action.  The tenants, who were self-represented, did not appear on either the original or the rescheduled trial date.  On August 30, 2021, a default judgment entered, and on September 22, 2021, at the landlord's request, an execution for possession and damages issued.

Nearly six months later, on March 15, 2022, the landlord moved for reissuance of the execution.  In its motion, the

---

[2] We acknowledge the amicus letter-briefs submitted by Joel Feldman, Esq., and by the Massachusetts Law Reform Institute.

landlord asserted that (1) it had refrained from levying on the execution while it attempted, unsuccessfully, to "work with the [tenants] to resolve their balance"; (2) in November 2021, when it attempted to schedule a levy, it discovered that the original execution issued by the clerk was defective because it was missing the premises' address; and (3) the landlord had then mailed the execution to its counsel to return to the court, but the execution was lost in the mail for some time and had expired.[3]  The expired execution was attached to the motion.

On May 17, 2022, a judge issued an order allowing the motion to reissue the execution.  Treating the tenants' ensuing motion to vacate that order as a motion for reconsideration, he denied it.  On June 16, 2022, the second execution issued.  The tenants filed a notice of appeal and moved for a stay of levy on the second execution pending appeal.

On June 24, 2022, the tenants moved to vacate the default judgment.  See Mass. R. Civ. P. 60 (b), 365 Mass. 828 (1974).  They asserted that their default resulted from excusable neglect attributable to one tenant's serious medical issues, and that the landlord's acceptance of funds from the Commonwealth's

---

[3] By statute, "[n]o sheriff, constable, officer, or other person shall serve or levy upon any such execution for possession later than three months following the date of the issuance of the execution."  G. L. c. 235, § 23, second par.  Here, the face of the execution stated its expiration date, December 21, 2021.

residential assistance for families in transition program (RAFT funds) barred the landlord from evicting them.

On June 30, 2022, at a hearing on the tenants' motions, the parties orally agreed that the tenants could remain in the apartment for two more months, provided that they timely made use and occupancy payments for July and August. There was also discussion of the tenants waiving their right to appeal. The judge stated that he would reduce the agreement to writing and issue it as an order. The resulting order stated, among other things, that the tenants waived all further appeals.

The tenants, denying that they had agreed to vacate the apartment or to waive their right to further appeals, filed a motion for clarification and renewed their motion for a stay pending appeal. In the same motion, they argued that the second execution should be recalled, because its issuance was barred by the prohibition in G. L. c. 235, § 23, second par., against issuing an execution for possession more than three months after judgment.

The judge denied the tenants' rule 60 (b) motion and their separate motion seeking clarification, a stay pending appeal, and recall of the second execution. The tenants then filed another notice of appeal, and a single justice of this court allowed the tenants' motion to stay levy on the second execution pending appeal.

Discussion. 1. The rule 60 (b) motion. The tenants argue that the judge misapplied the standard for determining excusable neglect and thus abused his discretion in denying their rule 60 (b) motion for relief from judgment. To address this argument, we must first recount in more detail what the record shows of the circumstances leading to the default judgment and the tenants' motion to vacate it.[4]

a. The default judgment and rule 60 (b) motion. The action was commenced in March of 2021. The tenants did not timely file an answer. On the date originally set for trial, July 23, 2021, the tenants did not appear and were defaulted. Later that day, one of the tenants appeared in court and told the judge she had not received notice of the trial date and had not known when the answer was due.[5] Crediting these assertions, the judge issued an order in open court allowing the tenants an additional week to file an answer and discovery requests and rescheduling the trial for August 27, 2021.

---

[4] Although the judge concluded that the tenants, at the June 30, 2022 hearing, waived their right to appeal, he did so before a transcript of that hearing was available. That transcript now having been produced, we have reviewed it carefully and conclude that the tenants did not waive their right to appeal any of the orders now before us. To the extent the judge found as fact to the contrary, the finding was clearly erroneous.

[5] It appears she was in court for a case management conference in a prior summary process action, before the same judge, involving the same parties. The details of that action are not relevant here.

The tenants did not, however, file any answer or discovery requests, and on the rescheduled trial date, they did not appear and were again defaulted.  The landlord submitted an amended account of its damages, and on August 30, 2021, the default judgment entered, awarding the landlord possession as well as damages and costs.  On September 22, 2021, at the landlord's request, an execution issued for possession and the amount due.

There was no further docket activity until March 16, 2022, when the landlord returned the execution as defective and, because it had expired, moved for reissuance of the execution. At an April 7, 2022 hearing on the motion, the tenants told the judge that they were seeking alternative affordable housing elsewhere and asked that the reissuance of the execution be delayed on equitable grounds.  The judge continued the hearing to April 21, to allow the tenants time to obtain documents to support their argument.  The judge also told the tenants that if they filed a rule 60 (b) motion before the April 21 hearing, he would hear the motion on that date.

The hearing was subsequently postponed until May 17, 2022, by which time the tenants had neither filed a rule 60 (b) motion nor furnished evidence satisfactory to the judge that they were sufficiently close to obtaining alternative housing to warrant an equitable stay.  The judge therefore allowed the motion to reissue the execution; the tenants moved for reconsideration;

the judge denied that motion in a written decision; and, on June 16, 2022, the second execution issued.

Only thereafter, on June 24, 2022, did the tenants file their rule 60 (b) motion. That motion, unsupported by any affidavits, asserted the following. In late July 2021, due to one tenant's serious medical issues, they had entrusted to a third party the mailing of their late answer and a motion to reschedule the trial. They did not know why neither the court nor the landlord received those papers. They called the Housing Court clerk several times and were told that the trial had not been rescheduled but that they would "get a notice." They received no such notice, however, and the medical issues made it impossible for either of them to attend court on the August 27 trial date. They received no notice of the entry of the default judgment. Their motion also indicated, however, that they knew by mid-February of 2022, if not earlier, that the original execution had been issued.

b. <u>Excusable neglect standard</u>. Rule 60 (b) (1) authorizes relief from judgment in cases of excusable neglect, provided the motion is made "within a reasonable time, and . . . not more than one year after the judgment . . . was entered." Mass. R. Civ. P. 60 (b). In <u>Berube</u> v. <u>McKesson Wine & Spirits Co</u>., 7 Mass. App. Ct. 426 (1979), we stated that motions seeking such

relief should "be measured against a consideration, among other relevant circumstances, of at least the following factors:

> "(1) whether the offending party has acted promptly after entry of judgment to assert his claim for relief therefrom; (2) whether there is a showing either by way of affidavit, or otherwise apparent on the record, that the claim sought to be revived has merit; (3) whether the neglectful conduct occurs before trial, as opposed to during, or after the trial; (4) whether the neglect was the product of a consciously chosen course of conduct on the part of counsel; (5) whether prejudice has resulted to the other party; and (6) whether the error is chargeable to the party's legal representative, rather than to the party himself; for the courts have been reluctant to attribute to the parties the errors of their legal representatives" (quotation and citation omitted).

Id. at 430-431.  See Care One Mgt., LLC v. Brown, 98 Mass. App. Ct. 589, 594 (2020) (same).  Rule 60 (b) motions "are commended to the judge's discretion, and a judge's decision will not be overturned, except upon a showing of a clear abuse of discretion" (quotations and citation omitted).[6]  Care One Mgt., LLC, supra.

i.  Timeliness.  The judge's order denying the rule 60 (b) motion stated that it was filed two months after the April 21, 2022 date by which he invited them to file it -- a date that he set so the motion could be heard before he reached the landlord's request to issue a second execution.  Although the

---

[6] Nine months after this appeal was docketed, and after it was fully briefed, the judge issued a supplemental memorandum further explaining his reasons for denying the rule 60 (b) motion.  We have not considered the supplemental memorandum.

tenants correctly argue that the judge had not expressly set that date as a deadline, we take the judge to have concluded that the filing of the motion two months later, on June 24, 2022, was unreasonably late.

The judge had ample basis to do so.  The rule 60 (b) motion was filed nearly ten months after entry of the default judgment; at least four months after the tenants became aware that the original execution had issued; more than three months after the landlord's motion for reissuance of the execution made clear to the tenants that a default judgment had entered and that the landlord still sought to enforce it; and more than a month after the judge had heard and allowed the motion to reissue the execution, and then invested additional judicial resources in hearing and issuing a written decision on the tenants' motion for reconsideration.  We cannot say the judge abused his discretion in viewing the rule 60 (b) motion as untimely.

ii.  _Meritorious claim_.  The tenants' rule 60 (b) motion argued, as explained in more detail _infra_, that the landlord's acceptance of RAFT funds created a contract that barred the landlord from proceeding with the eviction.  The judge rejected this argument on the ground, among others, that there was no evidence the landlord had ever agreed to such terms.  For somewhat different reasons, we conclude that the argument was

not so meritorious, on this record, as to tip the balance in favor of vacating the judgment.[7]

The tenants relied on language contained in a RAFT award letter dated April 22, 2021, addressed to them and the landlord, apparently issued by a RAFT administering agency.  The letter stated that the tenants' application for RAFT assistance had been approved in a specified amount.  The letter was on a form issued by the Department of Housing and Community Development (DHCD),[8] and further stated that by accepting RAFT funds, the landlord agreed to the following terms, among others:

> "I agree not to pursue eviction based on rent amounts reimbursed by these funds and agree to dismiss any pending eviction case that is based on or seeks to recover the reimbursed arrears.  I may bring an eviction case in the future if [p]articipant fails to pay future rent due after the date of this award.
>
> . . .
>
> "Nothing in this [a]greement precludes the owner/agent from using any and all remedies available under law, including the institution of eviction proceedings against the [p]articipant, if the [p]articipant fails to pay any future rent due after the date of this award or otherwise violates the terms of tenancy."

---

[7] The tenants urge us, even apart from their rule 60 (b) appeal, to reach the merits of this argument and finally resolve it in their favor.  We decline to do so.  What consequences flow from accepting RAFT funds is an issue of potentially broad significance, the resolution of which requires, among other things, a fuller record of the statutory basis of the program and of landlords' relationship to it.

[8] DHCD's functions were transferred to the new Executive Office of Housing and Livable Communities by St. 2023, c. 7.

The tenants also relied on a DHCD guidance document summarizing these terms.[9]

We will assume arguendo, unlike the judge, that the landlord, by accepting RAFT funds paid on the tenants' account, contractually bound itself "not to pursue eviction based on rent amounts reimbursed by these funds and . . . to dismiss any pending eviction case that is based on or seeks to recover the reimbursed arrears."  Even if that were so, however, the problem for the tenants here is that they did not establish that the eviction sought to recover rent amounts for which the landlord received RAFT funds.  Only some of the arrears were paid off by

---

[9] DHCD's 2021 RAFT "Policy Guidelines [Frequently Asked Questions]" document stated in relevant part that "[l]andlords/owners will continue to sign a contractual document and agree not to evict for any payments provided by RAFT.  The landlord may still evict after the RAFT payment is received if the tenant does not pay any future rent due."  Also, attached to the tenants' appellate brief is a 2021 letter from DHCD's chief counsel, addressed to a different Housing Court judge in an unrelated case, discussing the RAFT award letter terms quoted supra.  The letter opined that if the RAFT funds accepted by the property owner are not sufficient to pay the full amount due, "the property owner is expected to either enter into a repayment agreement with the tenant . . . or waive whatever [remaining] amounts . . . are owed."  The letter does not state that such an agreement or such a waiver is required by RAFT award terms or by law, nor does the letter itself have the force of law.  In any event, because the letter was not before the judge on the rule 60 (b) motion, we do not consider it further or otherwise rule on the obligations of landlords that accept RAFT funds.

RAFT funds, and the landlord appeared entitled to pursue this action to recover the arrears that remained.

More specifically, the rent ledger attached to the tenants' motion showed that as of April 8, 2021 (ten days after the action was commenced), the tenants were $16,040.07 in arrears on their rent.[10] After further charges and payments, on May 3, 2021, the landlord received a RAFT arrears payment of $13,633.79, but this still left the tenants $2,679.64 in arrears. On or about February 22, 2022, the landlord received a second RAFT arrears payment of $12,658.34, but the tenants submitted no evidence that this eliminated the arrears they had accumulated by that time, or any evidence of their account balance or arrearages during 2022.[11]

---

[10] That ledger contained no information for any earlier date. Based on a separate ledger including entries only through December 1, 2020, the tenants argued that in the past the landlord had improperly charged them for gas and electricity, but they submitted nothing establishing that any such amounts were included in the arrearages reflected on the more recent ledger. On appeal the tenants argue for the first time that their arrearages included amounts for parking and storage, nonpayment of which they assert could not be a ground for eviction. They did not make this argument in their rule 60 (b) motion, and therefore we do not consider it.

[11] Although we do not rely upon the point, the landlord's counsel represented to the judge at the rule 60 (b) hearing that at no point in the case had the RAFT payments completely eliminated the arrears and "zeroed the [tenants'] balance."

In short, it appeared that, throughout the case, the landlord was seeking to recover some rent arrearages that had not been covered by RAFT payments.[12]  The judge could thus properly view the tenants' claim that the RAFT award terms contractually barred the landlord from pursuing the case as insufficiently meritorious on this record to warrant rule 60 (b) relief.

iii.  When neglectful conduct occurred.  The tenants' neglectful conduct occurred before judicial and opposing-party resources had been invested in a trial, a factor that ordinarily presents a better case for rule 60 (b) relief.  See Berube, 7 Mass. App. Ct. at 429 (rule more forgiving "where the mischief leading to the judgment occurs at the pretrial stage").  On the other hand, even after the tenants became aware of the default judgment and the execution, they disregarded the judge's invitation to seek rule 60 (b) relief, and instead raised other issues necessitating additional hearings, before ultimately filing their rule 60 (b) motion.  Although the tenants were entitled to raise those other issues, their doing so before

---

[12] The default judgment entered on August 30, 2021, awarded damages of only $2,027.  The tenants' rule 60 (b) motion did not, however, advance any argument based on any discrepancy between that amount and the greater amount shown as due on the ledger attached to their motion.

filing the rule 60 (b) motion -- which might have mooted those issues -- could be viewed as unnecessarily burdening the court.

iv. Whether conduct was consciously chosen. The judge did not go so far as to say that the tenants' failure to appear for trial "was the product of a consciously chosen course of conduct." Berube, 7 Mass. App. Ct. at 431. He did, however, observe that the tenants "made no effort" to demonstrate excusable neglect. He evidently did not credit the tenants' vague, unsworn suggestions that they might have been uncertain about the August 27, 2021 trial date, or that medical issues prevented both of them from appearing in court on that date.[13] See Cicchese v. Tape Time Corp., 28 Mass. App. Ct. 72, 75 (1989) (judge could properly consider absence of affidavit establishing reason for default).

v. Remaining Berube factors. As for prejudice to the other party, see Berube, 7 Mass. App. Ct. at 431, vacating the judgment might have exposed the landlord to the risk of further uncollectable rent arrearages,[14] but the judge did not expressly consider this factor. The last Berube factor -- whether the

---

[13] Although the tenants' motion asserted that supporting affidavits were attached, and cited considerable caselaw for the proposition that affidavits were desirable or even required in these circumstances, no affidavits were attached.

[14] At hearing on the rule 60 (b) motion, in response to the judge's question, the landlord represented that the then-current arrearage was "upwards of $12,000."

neglect was chargeable to counsel rather than the party, see id. -- was not relevant here, where the tenants were self-represented at all times through their filing of this appeal.

In light of all the foregoing, the judge did not abuse his discretion in denying the tenants' rule 60 (b) motion.

2. Reissuance of execution. The tenants argue that G. L. c. 235, § 23, second par. (§ 23), barred the judge from ordering the execution to reissue in June of 2022, which was more than three months after the entry of judgment. Section 23's second paragraph provides

> "Executions for possession of premises rented or leased for dwelling purposes obtained in actions pursuant to chapter two hundred and thirty-nine shall not be issued later than three months following the date of judgment, except that any period during which execution was stayed by order of the court or by an agreement of the parties filed with the court shall be excluded from the computation of the period of limitation. Such executions shall be made returnable within three months after the date of issuance and shall state the date of issuance and the return date. No sheriff, constable, officer, or other person shall serve or levy upon any such execution for possession later than three months following the date of the issuance of the execution." (Emphasis added.)

Section 23 thus provides both an issuance period and a levy period. Any execution for possession must be issued within three months after judgment, although the running of that period may be tolled by a court order or by a filed agreement of the

parties.  And any levy on such an execution must occur within three months after its issuance.[15]

Although the tenants did not raise their § 23 argument before the judge ordered the execution to reissue, as would have been preferable, they did assert it -- and they requested that the execution be recalled -- in their motion for clarification and for a stay pending appeal.[16]  The judge addressed the argument at a time when he could have granted effective relief; he issued an order rejecting the argument and denying the

---

[15] Although not at issue in this case, other statutes also bear on the time for issuing summary process executions relative to the time for appealing a judgment and while an appeal is pending.  See G. L. c. 231, § 115; G. L. c. 235, § 16; G. L. c. 239, § 5 (a), (e), (h).  See also Rule 13 of the Uniform Summary Process Rules (1980); Mass. R. Civ. P. 62 (d), 365 Mass. 829 (1974); Adjartey v. Central Div. of Hous. Court Dep't, 481 Mass. 830, 857-860 (2019).  Here, the judgment against the tenants was a default judgment, which was not directly appealable.  See Rule 12 of the Uniform Summary Process Rules (2004); Adjartey, supra at 856.  Although the tenants were entitled to proceed as they did, by moving to vacate the default judgment and then appealing the order denying that motion, such an appeal does not by itself stay issuance of the execution. See Adjartey, supra at 856 n.15, 858.

[16] The tenants did not label their motion as one seeking to recall the execution, but we look to the motion's substance, not solely to its label.  See Care & Protection of Rashida, 488 Mass. 217, 233, 236 (2021), S.C., 489 Mass. 128 (2022).  Where the motion requested not merely a stay pending appeal but also recall of the execution, the judge's order, insofar as it denied the latter request, was properly appealed to a panel of this court.

motion, and the tenants timely appealed from that order.[17]  With
the issue thus properly before us, we agree with the tenants
that § 23 barred reissuance of the execution in this case.

The language of § 23 is straightforward, as is its
application to the facts before us.  After judgment for
possession issued on August 30, 2021, the original execution for
possession timely issued on September 22, 2021 -- within § 23's
three-month issuance period.  The landlord, however, did not
cause levy on the execution to occur during § 23's three-month
levy period.  Instead, after the levy period expired, the
landlord, on March 16, 2022, returned the execution to the court
and moved for its reissuance.  But that was well outside of
§ 23's three-month issuance period, and the running of that
period had not been tolled "by order of the court or by an
agreement of the parties filed with the court," as § 23 permits.
Therefore, the issuance period had expired, and under § 23 the

---

[17] Although the judge expressed doubt that his orders
regarding the execution were appealable, we note that "[w]hile
the issuance of an execution ordinarily may be a ministerial
act, questions of law may be involved which require invocation
of the judicial power, and decisions thereon by the [trial
court] are reviewable by [the appellate courts]" (quotation and
citation omitted).  Boston v. Santosuosso, 308 Mass. 202, 206
(1941).  See generally First Nat'l Bank of Boston v. Bernier, 50
Mass. App. Ct. 756 (2001) (reviewing and reversing order
allowing late issuance of execution).

judge had no authority to order the execution to issue or reissue.[18]

The judge concluded that, for two reasons, the landlord's delay in requesting reissuance was excusable, so that § 23 did not bar reissuance. First, the judge stated, "the initially issued execution was incomplete through the fault of the [c]ourt," in that the execution lacked the address of the premises at issue. The judge certainly had the authority to order the defective execution amended, had the landlord timely requested it. See Chesebro v. Barme, 163 Mass. 79, 81-82 (1895).[19] But the landlord did not do so, despite having discovered the defect at some unspecified time in November 2021.[20] And § 23 contains no exception to the three-month

---

[18] This view of § 23 is not new. Attached to the tenants' brief are copies of seven separate orders enforcing § 23's issuance period. The orders were issued by judges of the Housing Court between 2003 and 2019, a single justice of this court in 2000, and a single justice of the Supreme Judicial Court in 1988.

[19] In Chesebro, the court said, "the general principle is that, when the judgment is recovered in a court having jurisdiction, and the execution is issued by the proper officer, irregularities either in the mode of issuing it or in the document itself do not make it void, and that it may be dealt with by the court upon motion of either party, and amended or annulled, as justice may require." 163 Mass. at 81-82.

[20] The landlord could have accompanied such a request with a motion, or a written agreement signed by the parties, to stay issuance of the corrected execution. This could have stopped any further running of the three-month issuance period until

issuance period for a case in which the initial execution is defective.

The judge's second reason for excusing the landlord's delay was that "the parties were in negotiations for a possible resolution of [t]enants' arrears through RAFT assistance by [l]andlord's forbearance during the time of the continuing post-COVID urgency."  No doubt, settlements of summary process cases, even after judgment, are preferable to physical evictions on levy of execution.  But § 23 contains no exception to the three-month issuance period for a case in which the parties have been engaged in settlement negotiations.

Of course, what § 23 does allow is for the running of the three-month issuance period to be tolled for "any period during which execution was stayed by order of the court or by an agreement of the parties filed with the court."  If the parties here wanted more time to pursue settlement negotiations, then, at any time within the three-month issuance period, they could have filed with the court a written agreement to stay issuance of execution for whatever period they wished, or either party could have moved for an order staying such issuance.[21]  Had the

_____

such time as the landlord was prepared to move forward, or for such time as the parties agreed or as was otherwise ordered.

    [21] Apart from the issuance period, whether § 23 may also be read to allow the running of the three-month <u>levy</u> period to be

execution already been issued at the time the landlord
determined that it wanted more time to negotiate, then the
landlord could have returned the execution to the court along
with either a written agreement for a stay of issuance or a
motion for such a stay.  The landlord availed itself of none of
these options.  Instead, it allowed the three-month issuance
period to lapse.

Although other statutes may affect the time for issuance or
reissuance of a summary process execution for possession, the
judge did not discuss how those statutes may apply in light of
§ 23, nor have the parties done so on appeal.  We therefore
merely note the existence of such statutes and leave for another
day the questions they raise.[22]  One such statute is G. L.
c. 235, § 17, which provides in part:  "An original execution
shall not issue after the expiration of one year after the party
is first entitled to take it out; and an alias or other

---

tolled by a court-filed agreement or a judge's order is a
question not presented by this case and on which we express no
view.

[22] Similarly, we express no view on whether a landlord's
only remedy if an execution is unavailable is to file another
summary process action.  See Duross v. Scudder Bay Capital, LLC,
96 Mass. App. Ct. 833, 839-840 (2020) (discussing G. L. c. 239,
§ 7, and preclusive effect of summary process judgment on
subsequent litigation).

successive execution[23] shall not issue after the expiration of five years from the return day of that which preceded it."[24] Another such statute, G. L. c. 235, § 19, provides:  "If a judgment remains unsatisfied after the expiration of the time for taking out execution thereon, the creditor may obtain a new execution by motion to the court in which such unsatisfied judgment was rendered, or he may at any time after the judgment, subject to [G. L. c. 260, § 20], bring a civil action thereon."[25] See First Nat'l Bank of Boston v. Bernier, 50 Mass. App. Ct. 756, 759-760 (2001) (discussing relationship between §§ 17 and 19).

Conclusion.  So much of the order dated August 5, 2022, as denied the tenants' request to recall the execution as untimely is reversed; the order is otherwise affirmed, and the matter is

---

[23] An "alias execution" is "[a] second execution issued to enforce a judgment not fully satisfied by the original writ." Black's Law Dictionary 714 (11th ed. 2019).

[24] "Section 17 has been a part of our statutes in several versions since 1692.  St. 1692–3, c. 24, § 3.  The critical time limitation language of § 17 has not varied in its essential command since that time."  First Nat'l Bank of Boston v. Bernier, 50 Mass. App. Ct. 756, 757 (2001).  Section 17 was last amended in 1948, by St. 1948, c. 113.  In contrast, the language of § 23 with which we are concerned here was added in 1987, by St. 1987, c. 357, § 1.

[25] General Laws c. 260, § 20, provides:  "A judgment or decree of a court of record of the United States or of any state thereof shall be presumed to be paid and satisfied at the expiration of twenty years after it was rendered."

remanded to the Housing Court where a new order shall enter recalling the execution.

So ordered.